## JACKSON v. COMMISSIONER OF INTERNAL REVENUE.

### CRELLIN v. SAME (two cases).

### Nos. 4325, 4329, and 4330.

Circuit Court of Appeals, Third Circuit.

July 31, 1931.

H. Maurice Darling, of New York City (Darling & Daley, of New York City, of counsel), for petitioners.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, Andrew D. Sharpe, and F. Edward Mitchell, Sp. Assts. to Atty. Gen. (C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. K. Polk, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before BUFFINGTON, DAVIS, and THOMPSON, Circuit Judges.

THOMPSON, Circuit Judge.

These cases come up upon petitions for review of the decision of the Board of Tax Appeals entered in proceedings for the redetermination of deficiencies in income taxes assessed by the Commissioner of Internal Revenue for the year 1917. The cases of William H. Jackson and Edward W. Crellin were consolidated for hearing, and decision by the Board, and it was stipulated that the decisions in those cases should control the decision in the case of Amy H. Crellin.

The question for decision is whether, under the facts found by the Board of Tax Appeals, dividends declared by the Pittsburgh-Des Moines Company in January, 1917, and in August, 1917, and paid by checks to the petitioners and indorsed back to the company, and stock issued therefor, were taxable as cash dividends under the provisions of the Revenue Act of 1917, § 31 (a) of section 1211 of that act (40 Stat. 337), or were stock dividends and not taxable in accordance with the decisions in Peabody v. Eisner, 247 U. S. 347, 38 S. Ct. 546, 62 L. Ed. 1152, and Eisner v. Macomber, 252 U. S. 189, 40 S. Ct. 189, 64 L. Ed. 521, 9 A. L. R. 1570.

The Board of Tax Appeals found the following facts:

"The petitioners are individuals residing at Pittsburgh, Pennsylvania. The petitioner Amy H. Crellin is the wife of the petitioner Edward W. Crellin.

"Prior to March, 1900, the petitioners Edward W. Crellin and William H. Jackson formed a partnership with one Berkley N. Moss, each owning a one-third interest therein, to carry on the business of manufacturing structural steel for bridges, water tanks, and other purposes. In March, 1900, they organized the Des Moines Bridge and Iron Works, hereinafter called the Des Moines Company, under the laws of Iowa, which succeeded to the assets and business of the partnership. Each of the three former partners owned an equal number of shares of the capital stock of this corporation, and there was an oral agreement that their interests would remain equal. In 1911 Moss sold his stock in the corporation to Crellin and Jackson, and from that date Crellin and Jackson, and their families, owned in equal amounts the greater part of the shares of the corporation. There was an oral understanding between Jackson and Crellin that they would continue to own the capital stock of the corporation in equal shares, it being understood that the shares held by their respective families would be considered their shares for the purposes of the agreement.

"In the year 1907 the Des Moines Company established a branch office at Pittsburgh, Pennsylvania. Within a few years this branch became more important than the main office, and in the year 1916 it was incorporated as the Pittsburgh-Des Moines Company under the laws of Pennsylvania. Crellin and Jackson owned practically all of the Pittsburgh Company's stock in equal proportions, and they had an oral agreement that they would keep their interests and those of their families equal. The original capital of the Pittsburgh Company was paid in as follows: The Des Moines Company issued dividend checks to Crellin and Jackson; they endorsed the checks back to the company, and it in turn transferred the amount of the checks to the Pittsburgh Company, which issued its stock therefor.

"The Pittsburgh Company was created in order to escape the Pennsylvania tax on foreign corporations doing business in that State. No change was made in the manner of conducting the business; separate books were kept, but the Des Moines Company and the Pittsburgh Company were thought of, and referred to by the officers and employees thereof, as the Des Moines branch and the Pittsburgh branch. The two corporations worked as a unit. Tools, material, workmen and orders were freely shifted from Des Moines to Pittsburgh, and vice versa, as the needs of the moment required. The salaries paid to Crellin and Jackson were made up by the corporations in practically equal amounts.

"Beginning in 1902 certain of the more valued employees of the Des Moines Company were given the opportunity to purchase stock in that corporation at par, and beginning some time in 1917 the employees of the Pittsburgh Company were given the opportunity to purchase stock of that corporation at par. The shares so issued constituted a special class of common stock, known as 'Employees Stock', which differed from the common stock issued to Crellin and Jackson, and

their families, in that the employee could not sell or transfer his stock to any other person, and upon leaving the employ of the company he was required to return his stock to the company, which bound itself to take the stock at par. Employees owning stock could cash their dividend checks or turn them back to the company for more stock, as they wished. If the employees elected to turn back their dividend checks and take stock, they were given the privilege of taking stock in either of the companies.

"From March, 1900, to the end of the year 1917 only small amounts were drawn by Crellin and Jackson as salary, and all the profits of the two corporations were turned back into the business, except as hereinafter noted.

"In the years prior to 1908 the surplus of the Des Moines Company was capitalized at the end of each year by transferring it by means of entries debiting the shop accounts, or gain and loss account, and crediting the capital stock account. Beginning in 1908 checks were drawn when the directors authorized a dividend, and these checks were endorsed and returned to the company by Crellin and Jackson and stock issued to them for the amount of the checks. There was always an understanding between Crellin and Jackson that this would be done. Moss was also a party to this arrangement until his retirement in 1911. Except in the years 1911, 1913, and 1914, the total amounts of the dividend checks largely exceeded the amount of the cash on hand, the surplus of the corporation being represented principally by materials and supplies on hand, and buildings and equipment.

"During the year 1917 the officers of the Des Moines Company and the Pittsburgh Company were E. W. Crellin, president; W. H. Jackson, secretary-treasurer, and G. A. Smith, vice-president.

"On January 22, 1917, the directors of the Des Moines Company declared a 37 per cent. dividend by the following resolution:

"The Secretary and Treasurer made the financial report of the Corporation as of December 31, 1916, showing surplus of $206,-442.33, and reported that after paying the dividends on the Preferred Stock due January 15, 1917, and providing for the Government Income Taxes, the general taxes and bonuses on Capital Stock, that a dividend of 37 per cent. might be paid on the Common Capital Stock moved that such dividend be paid upon such stock for the pro-rata portion of the year 1916. Seconded by G. A. Smith, the motion carried and a dividend of 37 per cent. on the Common Stock was ordered paid in accordance with the schedule appearing on the following page. * * *

"A check for the amount of the dividend due each stockholder, pursuant to the foregoing resolution, was drawn by the company and actually delivered to the stockholder. The Crellin family received dividend checks in the total amount of $73,260, and the Jackson family received checks in the total amount of $73,260, and the stockholders received checks in the total amount of $50,678.-16. All of the checks received by the Jackson family, and all of the checks received by the Crellin family, excepting two checks in the amount of $629, were endorsed back to the Des Moines Company.

"When these dividend checks were endorsed back to the Des Moines Company the amounts thereof were credited to the Pittsburgh Company by the following entry on the books of the Des Moines Company:

| January 26, 1917. | Debit to Cash. |
|---|---|
| Cr. Pgh. D. M. Co. (Per a/c Amy H. Crellin) | $31,820.00 |
| Cr. Pgh. D. M. Co. (Per a/c E. W. Crellin) | 40,182.00 |
| Cr. Pgh. D. M. Co. (Per a/c W. H. Jackson) | 5,550.00 |
| Cr. Pgh. D. M. Co. (Per a/c W. H. Jackson) | 67,710.00 |
| | $145,262.00 |

"On the books of the Pittsburgh Company the personal accounts of Amy H. Crellin, E. W. Crellin, and W. H. Jackson, were respectively credited with the amount of the checks which had been turned back to the Des Moines Company, and the Des Moines Company was charged on the books of the Pittsburgh Company with the total amount so credited. Thus there resulted an increased credit of $73,260 to the Jacksons on the books of the Pittsburgh Company, an increased credit of $72,002 to the Crellins on the books of the Pittsburgh Company, and a total debit to the Des Moines Company of $145,262. At the time the January dividend was declared and paid by the Des Moines Company, there were 5444 shares of capital stock outstanding, of which 1980 shares were held by the Crellin family, 1980 shares by the Jackson family, and 1444 shares by outsiders. Of the 1444 shares held by outsiders, the holders of 658 shares took Des Moines Company stock in exchange for their

dividend checks, the holders of 625 shares took Pittsburgh stock, and the holders of 161 shares elected to take cash.

"On January 29, 1917, the directors of the Pittsburgh Company declared a 37 per cent. dividend by the following resolution:

"The Secretary-Treasurer read the Financial Statement of the Corporation as of December 30, 1916, showing a surplus of $94,043.59, and reported that after paying the dividends on the Preferred Stock due January 15, 1917, and providing for the Government Income Taxes, the general taxes, and bonus on capital stock, that a dividend of 37 per cent. might be paid on the common capital stock, and moved that such a dividend be paid on such stock.

"Seconded by E. W. Crellin. The motion carried and a dividend of 37 per cent. on the common capital stock was ordered paid in accordance with the following schedule:

Distribution of Pittsburgh-Des Moines Company Common Stock Dividends.

37 Per Cent.

| Name | Shares | Dividend. |
|------|--------|-----------|
| W. H. Jackson | 1225 | $45,325.00 |
| E. W. Crellin | 1053 | 38,961.00 |
| Amy H. Crellin | 172 | 6,364.00 |
| G. A. Smith | 2 | 74.00 |
| Max Whitacre | 45 | 1,665.00 |
| | 2497 | $92,389.00 |

"Dividend checks were issued to the Crellins and the Jacksons in the amount of $45,325 to each family. Upon the receipt of the dividend checks the Crellins and the Jacksons endorsed them back to the Pittsburgh Company and the amounts thereof were credited to their personal accounts on the books of that company, making a total increase of $118,585 to the personal credit of the Jackson family, and a total increase of $117,327 to the personal credit of the Crellin family on account of the dividends declared on January 22, 1917, by the Des Moines Company, and on January 29, 1917, by the Pittsburgh Company. On January 31, 1917, the Pittsburgh Company issued to the Crellin family 1160 shares of its capital stock of a total par value of $116,000, and also issued to the Jackson family 1160 shares of its capital stock of a par value of $116,000. Since the total credit to the Jackson family on account of the dividends mentioned amounted to $118,585, and the total credit to the Crellin family on account of said dividends amounted to $117,327, there remained, after the issuance to each family of stock of the Pittsburgh Company of the par value of $116,000, a balance of $2585 to the credit of the Jackson family and a balance of $1327 to the credit of the Crellin family on account of said dividends.

"Max Whitacre and G. A. Smith, who were, on the dates the January dividend of the Pittsburgh Company were declared and paid, the owners of 45 shares and 2 shares, respectively, of the capital stock of the Pittsburgh Company, turned back their dividend checks to the company for shares of the capital stock of the Pittsburgh Company and the Des Moines Company, respectively.

"On August 27, 1917, the Des Moines Company declared a 10 per cent. dividend by the following resolution:

"The Secretary-Treasurer called attention to the financial statement of the Corporation and to the amount which had been carried as Material Inventory Reserve Account from the earnings of 1916, and after discussion it was decided that owing to the high prices which steel had maintained during the year, that this reserve was unnecessary, and therefore, moved that a dividend of 10% be paid from this 1916 material reserve account upon the common capital stock of this Company as shown by the books outstanding July 1, 1917, in accordance with the rule for participation which has been followed in the past by the Company.

"The motion was seconded by G. A. Smith and carried, a dividend of 10% on the common capital stock was ordered paid in accordance with the schedule appearing on the following page. * * *

"On August 31, 1917, dividend checks were issued to the Crellin and Jackson families in the amount of $19,800 each and these checks, except two amounting to $340, were endorsed back to the company, which on September 6, 1917, and September 8, 1917, debited cash and credited the Pittsburgh Company '(Per a/c of W. H. Jackson)' etc., with the amounts thereof. The Pittsburgh Company took up these credits by charging the Des Moines Company and crediting the personal accounts of the Jacksons and Crellins with the same amount. No stock was issued by the Pittsburgh Company to the Jacksons and Crellins at this time for the reason that the Pittsburgh Company had issued to each family $14,500 of stock in February,

1917, and $19,500 of stock in March, 1917, under the circumstances hereinafter set forth.

"On August 27, 1917, and August 31, 1917, the Crellins and the Jacksons owned 3960 shares out of 5812 shares of the capital stock outstanding in the Des Moines Company, the remaining 1852 shares being held by employees. As to these 1852 shares, the holders of 709 shares took Des Moines Company stock in exchange for their dividend checks, and the holders of 1143 shares elected to take cash.

"The Pittsburgh Company in the spring of 1917 was insufficiently capitalized and unable to properly care for the business incidental to war conditions. In order that the company might make as good a showing as possible in obtaining contracts, and have its capital stand as high as possible, Jackson and Crellin arranged in February, 1917, that instead of having the company borrow additional capital on its own notes, they would borrow on their notes $50,000 in February and $40,000 in March, and make advances to the company from the proceeds of the notes. However, in order to prevent these advances from appearing as accounts payable, Crellin and Jackson agreed to take stock in the company to the extent of the advances so that on the financial statement of the company the stock so issued would balance the advances. Crellin and Jackson each transferred to the Pittsburgh Company from the proceeds of personal loans the amounts of $19,500 on February 8, 1917, and $14,500 on March 27, 1917. The company debited cash and on the same dates it issued capital stock in the same amounts to Crellin and Jackson and their families. These issues of stock had the form of purchases and sales, but by agreement between Crellin and Jackson they were issued in anticipation of a subsequent dividend. On August 8, 1917, the Pittsburgh Company paid the joint note for $40,-000 from the proceeds of which Crellin and Jackson loaned the company $39,000, and on August 28, 1917, it paid the joint note for $50,000, from the proceeds of which they had loaned the company $29,000. The amounts so paid were charged to the personal accounts of Crellin and Jackson and cash was credited with the same amount.

"On August 27, 1917, the Pittsburgh Company declared a dividend of 10 per cent. by the following resolution:

"The Secretary and Treasurer called attention to the financial statement of the Corporation and to the amount which had been carried as Material Inventory Reserve Account, from the earnings of 1916, and after discussion it was decided that owing to the high prices which steel had maintained during the year, that this reserve was unnecessary, and therefore moved that a dividend of 10 per cent. be paid from this 1916 material reserve account upon the common capital stock of this company as shown by the books outstanding July 1, 1917, in accordance with the rule for participation which has been followed in the past by the company.

"The motion was seconded by G. A. Smith and carried, and a dividend of 10 per cent. on the common capital stock was ordered paid in accordance with the schedule appearing on the following page. * * *

"On August 31, 1917, the company issued dividend checks to the Crellin family in the amount of $26,703.27 and dividend checks in the same amount were also issued to the Jackson family. These checks were duly endorsed by the Crellins and Jacksons and were returned to the Pittsburgh Company and the amounts thereof were credited to the personal accounts of the Jacksons and Crellins, cash being debited.

"On September 30, 1917, the Pittsburgh Company issued capital stock to the Jackson family and the Crellin family in the amount of $25,000 each and charged the same to their personal accounts.

"On August 27, 1917, and August 31, 1917, the Crellins and the Jacksons held 5450 shares of the 6042 shares of the capital stock of the Pittsburgh Company outstanding, the remaining 592 shares being held by employees. As to these 592 shares the holders of 309 shares elected to take cash.

"The Des Moines Company and the Pittsburgh Company, at the times they declared the dividends hereinbefore mentioned, had surplus at least equal to the amounts of the dividends. However, the cash available on January 22, 1917, to meet the dividend of the Des Moines Company declared on that date, which amounted to $197,198.16 was $5,163.20. The cash available on August 30, 1917, to meet the dividend declared by the Des Moines Company on August 27, 1917, which amounted to $57,988.39, was $14,645.-26. The cash available on January 30, 1917, to meet the dividend declared by the Pittsburgh Company on January 29, 1917, which amounted to $92,389, was $7,248.51. The cash available on August 30, 1917, to meet the dividend declared by the Pittsburgh Com-

pany on August 27, 1917, which amounted to $59,014.94, was $32,733.17.

"The Crellins and the Jacksons had personal accounts only with the Pittsburgh Company; they had no personal accounts with the Des Moines Company.

"The petitioners in their income tax returns for the year 1917 treated the dividends as above set forth as stock dividends and not taxable as income. The respondent, upon audit of the returns, determined that the dividends were taxable and that there were deficiencies in tax as hereinbefore set forth."

The Board of Tax Appeals was of the opinion that the two dividends declared and paid in 1917 by the Pittsburgh Company were cash dividends and taxable to the recipients. As the petitioners introduced no evidence in support of the issue concerning the dividends of the Des Moines Company, that issue was decided in favor of the Commissioner. The petitioners have abandoned their contentions regarding tax upon the Des Moines Company dividends paid in 1917.

The attorneys have stipulated the following additional facts based on the testimony produced:

"Before the various dividends of the Des Moines Bridge and Iron Works were declared in the years 1912 to 1917, inclusive, and before the two dividends of the Pittsburgh-Des Moines Company were declared in 1917 all of the three directors, including George H. Smith, who was a director in each company and all of the three officers, including George H. Smith, vice-president in each company, knew in advance that the dividend checks of the two associates, Mr. Jackson and Mr. Crellin—under a very definite understanding between Jackson and Crellin—would be endorsed back by them into the business, and that capital stock of the Des Moines Bridge and Iron Works, in the earlier years (or capital credits in the corresponding partnership), and capital stock of the Pittsburgh-Des Moines Company in 1917, would be issued for the amounts of the checks to Mr. Jackson and Mr. Crellin, respectively; and, in the case of the 1917 dividends, directions were given by Mr. Crellin, or by Mr. Jackson, to the secretary of the Pittsburgh-Des Moines Company to issue the stock as aforesaid. This understanding was also known to all of the employees who held special stock."

We think the salient facts may be briefly summarized as follows:

Jackson and the Crellins had an understanding which extended through the history of the Des Moines Company down into that of the Pittsburgh Company that each of the two families should hold an equal number of shares of stock of the two companies. In consequence of that understanding and agreement, it would follow that, if Jackson did not take his dividend in stock, the Crellins would hold a controlling interest in the corporation, and vice versa. All the facts point to an agreement at the time the resolutions for the January dividend and the August dividend were presented and adopted that the checks should be returned to the company and stock issued. Prior to the directors' meetings, it was agreed by Jackson and Crellin that they would exchange their dividend checks for stock. They not only owned a controlling interest in the stock of the corporation which enabled them to control the action of the board of directors, but they were, to all practical purposes, the board. The resolutions were adopted at each of the meetings upon the faith of the agreement between Crellin and Jackson that the dividend checks would not be cashed but would be turned in for stock.

There was not sufficient cash in the treasury of the company to pay the dividends. The cash available on January 30, 1917, to meet the dividend, amounting to $92,389, declared by the Pittsburgh Company on January 29, 1917, was $7,248.51, and the cash available on August 30, 1917, to meet the dividend, amounting to $59,014.94, declared by the Pittsburgh Company on August 27, 1917, was $32,733.17 It can hardly be conceived that Jackson and the Crellins, with knowledge of the condition of the treasury, caused the resolutions to be presented and passed expecting or intending to receive in cash the amount of their dividend checks. The corporation was a family affair. The outstanding stock held by Smith and Whitacre was negligible so far as any influence in the management or control of the corporation was concerned.

It was held by the Board of Tax Appeals that this was not an agreement which was binding upon the corporation because its terms were not embodied in the resolutions declaring the dividends. But we are considering here a consummated transaction. Whether the corporation could have been compelled to comply with the terms of the oral agreement entered into by the controlling stockholders, had an objection been made by a minority stockholder or a credi-

656

tor, is not an issue here. The corporation did in fact declare the dividends and issue checks which were intended to be, and in fact were, converted into stock.

The respondent contends that agreements made by stockholders or directors or trustees among themselves are not binding upon them as a board, and they cannot, under such agreements, bind the corporation. But here there are no objecting stockholders or others in interest who claim to be injuriously affected by the acts complained of. The terms of the resolution adopted at each meeting were solely for the purpose of having dividend checks issued when all parties knew that the dividends could not be paid in available cash. The effect of the resolution was merely to produce the checks, and the rest of the transaction was a matter of bookkeeping through which the company charged itself and credited Jackson and the Crellins with the returned checks, and accomplished the object of issuing stock against its surplus represented "by materials and supplies on hand, and buildings and equipment."

Jackson and the Crellins, after the stock was issued to them, held no greater proportion of the assets of the corporation than they did before as to the January dividend, because Whitacre and Smith also turned back their dividend checks for stock, so that all stockholders, after the January dividend, held the same proportion as before. After the August dividend was declared, however, some few of the employees elected to take cash instead of shares of stock. As is shown in the Board's findings, that stock was not of the same class as that owned by Jackson and the Crellins but was "Employees Stock."

Upon all the facts in these cases, our conclusion is that the dividends declared, so far as the petitioners are concerned, were cash dividends only in name, and were intended as part of a plan by which the surplus earnings would remain in the corporation and the petitioners would receive stock in equal amounts, and continue to hold their equal interests. The issues raised in these cases have all been considered and decided adversely to the respondent's contentions by this court in the cases of United States v. Mellon, 281 F. 645, and United States v. Davison, 9 F.(2d) 1022, certiorari denied 271 U. S. 670, 46 S. Ct. 484, 70 L. Ed. 1143.

Holding as we do that the purpose of the plan and the resolutions adopted by the directors of the corporation was not to have the corporation pay a cash dividend, and since

in fact no cash dividends were received by Jackson and the Crellins, we conclude that the Board of Tax Appeals erred in its order and decision finding deficiencies in the tax of the petitioners for 1917.

The decision is therefore reversed.