Dick PATTON, et ux., et al.

v.

The UNITED STATES.

Nos. 14–81T, 15–81T and 513–81T.

United States Claims Court.

Jan. 3, 1983.

Towner Leeper, El Paso, Tex., for plaintiffs.

Michael J. Dennis, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant; Theodore D. Peyser, Washington, D.C., of counsel.

## OPINION

MEROW, Judge:

These consolidated tax refund matters come before the court on motions for summary judgment filed by the parties. At issue is whether plaintiffs obtained certain taxable dividend distributions during 1974.

## FACTS

Plaintiffs, during the period of time relevant to this litigation (1973–1974), owned Western Packing Company (Western), a New Mexico corporation having its regis-

tered office located in El Paso, Texas.[1] As of January 1, 1972, Western elected to be taxed as a small business corporation pursuant to subchapter S of the Internal Revenue Code of 1954, as amended, 26 U.S.C. 1371–78 (all references herein are to the 1954 Code unless otherwise stated). Western terminated its election under subchapter S effective January 1, 1974.

As of December 31, 1973 Western's books and records reflected $346,082.95 in undistributed taxable income, but cash on hand of only some $150. Recognizing that, under 26 U.S.C. 1375(f), distribution of this undistributed taxable income could be made free of income taxes to the shareholders only within 2½ months after the close of the taxable year of the corporation (by March 15, 1974), William Patton attempted to arrange a bank loan to Western so that funds could be obtained to make the distribution. William Patton did not have success in his initial attempts to obtain such a corporate loan from the El Paso National Bank and the Bank of El Paso.

On March 15, 1974 an official of the Southwest National Bank of El Paso met with Dick and Moody Patton and Thomas Stone (Pattons' accountant) and agreed that a loan of $346,000 would be made by the bank to Western, of which $116,000 would be available to the corporation and to its shareholders immediately, but the balance of the loan would be invested in certificates of deposits which would be retained by the bank as collateral for the loan.

On March 15, 1974 an account was opened for Western in the Southwest National Bank of El Paso, in which an initial deposit of $1,938 was made. The loan documents were not completed until Monday, March 18, 1974, when $346,000 was deposited to the Western account. Simultaneously with making this loan deposit on March 18, 1974, the Western account was debited $346,000 for the purchase of three certificates of deposit: No. 5557, maturity date March 18, 1978, for $115,000 payable to Dick Patton or Barbara Ann Patton; No. 5558, maturity date March 18, 1978, for $115,000 payable to Moody Patton, Jr. or Bernice Patton; No. 5533, maturity date April 17, 1974, for $116,000 payable to Moody or Dick Patton. The two $115,000 certificates were then deposited and pledged with the bank by the Pattons as collateral security for the $346,000 loan to Western and so retained by the bank.

Western's federal income tax return for the year ended December 31, 1974 reported that the entire amount of its undistributed taxable income had been eliminated and reported current earnings and profits of $441,319.[2]

On audit of plaintiffs' 1974 federal income tax returns the Internal Revenue Service (IRS) determined that the amounts involved in the certificates of deposit discussed above constituted taxable dividend distributions to plaintiffs in the calendar year 1974 and assessed additional taxes for this asserted income. Plaintiffs paid the additional taxes involved and filed timely claims for refund which were disallowed by the IRS. This litigation ensued.

## DISCUSSION

█ In their claims for refund and in their petitions and motion for summary judgment filed in this litigation, plaintiffs assert that, with respect to the $230,000 in certificates of deposit pledged with the bank, no distribution from Western to them occurred. Accordingly, plaintiffs assert that the $230,000 "is now locked in as a part of the corporation's capital * * *."

1. Plaintiffs William (Moody) and Bernice Patton together, as community property, owned 51 percent of the outstanding Western stock. Bernice Patton is now deceased and William Patton brings this action for himself and for the estate of Bernice Patton. The remaining 49 percent of the outstanding Western stock is owned by plaintiffs Dick and Barbara Patton as their community property.

2. Western's financial statement as of December 31, 1974 (note 4) states that "Due to the termination of the sub-chapter S election, and under the provisions of the Internal Revenue Code, the $346,092.95 of undistributed taxable income was distributed to the shareholders in the form of a cash distribution prior to March 15, 1974."

To constitute distributions includable within a shareholder's gross income, the cash or property distributed by the corporation must be "unqualifiedly made subject to their [shareholders'] demands." Treas.Reg. 1.301–1(b). The exhibits submitted by the parties in support of their motions for summary judgment demonstrate that the funds represented by the three certificates of deposit were, on March 18, 1974, so made subject to the shareholders' demands. On that date the loan of $346,000 to Western was approved by the Southwest National Bank and the funds deposited in Western's account. The Western account was then charged $346,000 to purchase three certificates of deposit issued in the names of the shareholders, with two of the certificates ($230,000) then pledged by the shareholders as collateral for Western's loan. The exhibits show that the shareholders thereafter received the interest income from the certificates and that Western and the bank recognized that the certificates were owned by the shareholders. In a subsequent financial statement and in correspondence with the IRS, Western represented that a distribution had been made to its shareholders of the funds represented by the March 18, 1974 certificates.

In the above circumstances, it is concluded that the plaintiffs received dividend distributions from Western on March 18, 1974 in the amount of the certificates of deposit issued in their names. The fact that two of the certificates, when issued, were pledged by the shareholder owners as collateral for Western's loan indebtedness, does not detract from the fact that the dividend distribution was made. *Soreng v. CIR*, 158 F.2d 340 (7th Cir.1946); *McKelvy v. United States*, 201 Ct.Cl. 557, 478 F.2d 1217 (1973).

█ Plaintiffs next argue that Western distributed $116,000 to them on March 15, 1974 so as to come within the provisions of 26 U.S.C. 1375(f). Under section 1375(f), Western had only until March 15, 1974 to make a nondividend money distribution of the undistributed taxable income on its books at the close of its 1973 taxable year. Thus, if Western made a money dividend

distribution of $116,000 to plaintiffs on or before March 15, 1974, inclusion by IRS of this $116,000 in the gross income of plaintiffs for 1974 would be in error. As noted previously, however, the exhibits submitted by the parties establish that the $346,000 (including the $116,000 portion thereof) was not actually distributed to plaintiffs until March 18, 1974—beyond the time permitted by section 1375(f).

Plaintiffs urge, however, that under the arrangement made with the Southwest National Bank, the $116,000 could have been made available to them on March 15, 1974. Also, the minutes of a special meeting of Western's board of directors on March 15, 1974 reflect the intention of the corporation then to borrow money in order to make a distribution of $346,000. The plain fact is, however, that no actual distribution of funds to plaintiffs occurred prior to March 18, 1974, whereas section 1375(f) could apply only to money distributions made to plaintiffs on or before March 15, 1974. To the extent the Western-Southwest Bank-shareholder transactions created any corporate distribution obligation to plaintiffs prior to March 18, 1974, such an obligation could not be characterized as the required distribution of "money." At best, any such obligation could only be characterized as one involving "property" as distinguished from the "money" distribution section 1375(f) requires. *McKelvy v. United States, supra; Fountain v. Commissioner*, 59 T.C. 696 (1973).

Plaintiffs have not established that the action of the IRS in including the $346,000 involved in this matter in their 1974 gross income was in error.

CONCLUSION

In the above circumstances, it is concluded that, as plaintiffs have established no valid basis for the tax refunds sought, their motion for summary judgment is denied, defendant's motion for summary judgment is granted, and final judgment shall be entered dismissing the petitions filed in these consolidated matters.