FRIEDMAN, Circuit Judge.
 

 The issue in this appeal from the United States Claims Court is the taxability as corporate dividends of two transactions by which a former subchapter S corporation attempted to make a tax-free distribution of its earnings by purchasing certificates of deposit for its shareholders. The Claims Court held that both transactions constituted taxable dividends and therefore granted summary judgment for the government in the taxpayers’ refund suit. We affirm with respect to one transaction and reverse with respect to the other.
 

 I
 

 A. Under Subchapter S of the Internal Revenue Code of 1954, as amended (Code), I.R.C. §§ 1371-1379 (West 1983), certain small business corporations may elect to be taxed as though they were partnerships. With two exceptions not pertinent here, a subchapter S corporation that so elects is not subject to corporate income taxes. I.R.C. § 1372(b). Instead, each shareholder is taxed upon his or her share of the corporation’s income, both distributed and undistributed, I.R.C. §§ 316, 1373, and may deduct his or her share of the corporation’s net operating losses. I.R.C. § 1374.
 

 If a subchapter S corporation does not distribute its income in a particular year, the basis of its shareholders (who have paid the tax upon their shares of that income) in their stock is increased by the amount of the corporation’s income upon which they paid the tax. I.R.C. § 1376. If, on the other hand, the shareholders have deducted the corporation’s net operating losses, their basis in their stock is correspondingly reduced.
 
 Id.
 

 A subchapter S corporation may distribute tax-free to its shareholders income upon which they have paid the tax. I.R.C. § 1375(d). Such tax-free distribution may be made only after the corporation first has distributed all the current year’s taxable income. I.R.C. § 316(a); Treas.Reg. § 1.1375 — 4(b).
 

 A subchapter S corporation may make a tax-free distribution to its shareholders of its income for the immediately preceding year, upon which the shareholders have paid the tax, by making a “distribution of money ... on or before the 15th day of the third month following the close of such taxable year.” I.R.C. § 1375(f).
 

 B. The appellants are three shareholders of Western Packing Company (Western) and the executor of the estate of a fourth shareholder. Together they own all the stock of Western. In 1972 and 1973, Western elected to be taxed as a subchapter S corporation. In 1973, Western had approximately $346,000 in undistributed income, upon which the appellants paid the tax. As of the close of the year, however, Western had only $150 in cash.
 

 Western terminated its subchapter S status as of January 1,1974. Western’s shareholders could have received a tax-free distribution of the 1973 earnings only pursuant to section 1375(f),
 
 i.e.,
 
 if Western made a “distribution of money” to them by March 15, 1974.
 

 Western attempted to borrow the money needed to distribute the $346,000 to its shareholders. Its first two endeavors to obtain a loan were unsuccessful. Finally, on March 15,1974, Western arranged with a
 
 *1576
 
 bank to obtain a loan of that amount. On that date, Western opened an account with the bank and made an initial deposit of $1,938.
 

 The actual loan was not made until the following Monday, March 18. On that date, the following transactions were simultaneously executed:
 

 (1) Western executed the loan documents, obligating itself to repay the bank $346,000, plus interest.
 

 (2) The bank credited Western’s account with $346,000.
 

 (3) Western purchased from the bank, in the name of its shareholders, three certificates of deposit totalling that amount.
 

 (4) Two of the certificates of deposit, for $115,000 each, were pledged as collateral for the loan. In an affidavit, which the government did not controvert, the senior vice president of the bank stated that these two certificates, although “issued in the names of the individuals,” “were never set aside for the individual benefit” of the shareholders, “but remained in the custody and control” of the bank “as collateral for” the loan. He further stated that “[u]nder no circumstances would I have permitted the bank to have delivered the certificates of deposits” to the shareholders had they “so demanded. The certificates of deposit would and could have been released only upon payment of the corporate loan of $346,000.00”
 

 (5) At the request of the shareholders, the third certificate of deposit for $116,000, the proceeds of which the shareholders intended to use to pay their federal income taxes, was made payable on April 17, 1974. This was done so that the shareholders could obtain interest on the money for the intervening 30 days.
 

 All of the documents evincing these transactions were executed on March 18, 1974.
 

 In its 1974 federal income tax return, Western stated that its entire undistributed taxable income had been eliminated. The shareholders did not report any of the certificates of deposit as taxable income.
 

 On audit of the shareholders’ returns, the Internal Revenue Service determined that the amounts of the certificates of deposit constituted taxable dividend distributions to the shareholders in 1974, and asserted deficiencies based upon that determination. The shareholders paid the deficiencies and, after the Service denied their timely claims for refund, filed suit in the Court of Claims in 1981.
 

 Both sides moved for summary judgment. The Claims Court (which under Section 403(d) of the Federal Courts Improvement Act of 1982, Pub.L. No. 97-164, 96 Stat. 25, succeeded to the Trial Division of the Court of Claims on October 1, 1982) granted the government’s motion, denied the appellants’ motion, and dismissed the case.
 

 With respect to the two pledged certificates of deposit, the court held that the funds they represented “were, on March 18, 1974, ... made subject to the shareholders’ demands,” which is the standard under the governing Treasury regulation for determining whether corporate distributions are taxable income to the shareholders.
 
 See
 
 Treas.Reg. § 1.301-l(b). The court noted that the certificates were issued in the names of the shareholders, that Western and the bank recognized that the shareholders were the owners of the certificates, that the shareholders pledged the certificates as collateral for the loan, and that the shareholders received the interest on the certificates.
 

 With respect to the certificate for $116,-000 due on April 17, 1974, the court held that “no actual distribution of funds to plaintiffs occurred prior to March 18, 1974, whereas section 1375(f) could apply only to money distributions made to plaintiffs on or before March 15, 1974.” The court further held that to the extent the transaction “created any corporate distribution obligation to plaintiffs prior to March 18, 1974, such an obligation could not be characterized as the required distribution of ‘money.’ At best, any such obligation could only be characterized as one involving ‘property’ as distinguished from the ‘money’ distribution section 1375(f) requires.”
 

 
 *1577
 
 II
 

 A. 1. Under section 316(a)(1) of the Code, a “distribution of property made by a corporation to its shareholders ... out of its earnings and profits” is a “dividend” which, under section 301(c)(1), is included in each shareholder’s gross income. Section 1375(f) of the Code, however, provides an exception to this rule for distributions a subchapter S corporation makes to its shareholders within two-and-one-half months of the close of its taxable year. It states that such a distribution that meets the statutory criteria (which is not an issue here) “shall be treated as a distribution of the corporation’s undistributed taxable income for such year ... [and] shall ... be considered a distribution which is not a dividend....” I.R.C. § 1375(f).
 

 Treasury Regulation 1.301-l(b) defines when a corporate distribution of property is received by the shareholders and therefore is includable in their gross income. It provides:
 

 A distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands.
 

 This regulation embodies the concept of constructive receipt of income. The regulations require that income be included in the year in which it is “actually or constructively received” by the taxpayer. Treas.Reg. § 1.451-l(a). Regulation 1.451-2 covers “Constructive receipt of income,” and gives as an example: “Dividends on corporate stock are constructively received when unqualifiedly made subject to the demand of the shareholder.” Treas.Reg. § 1.451-2(b). The concept of constructive receipt is designed to prevent taxpayers who can control the timing of the receipt of income from shifting the year of receipt so as to avoid or reduce the tax to which they would normally be subject.
 
 Cf. Ross v. Commissioner,
 
 169 F.2d 483, 491 (1st Cir.1948) (per Frankfurter, J.); 2 J. Mertens,
 
 Law of Federal Income Taxation
 
 § 10.01 (rev. ed. 1982). As demonstrated below, that was not the situation in the present case.
 

 2. Although the appellants may have become the owners of the certificates of deposit when the bank issued the certificates (purchased with the $346,000 loan to Western) in the name of the appellants on March 18,1974, at that time the certificates were not “unqualifiedly made subject to their demands” and the appellants did not constructively receive them.
 

 Concededly the appellants did not actually receive the certificates on that date, since neither then nor at any time since did the certificates leave the custody of the bank. The appellants did not constructively receive the certificates because,* except for the receipt of the interest from the certificates, the appellants could not have obtained or directed the distribution of the certificates.
 

 This is conclusively established by the affidavit of the bank president which, we repeat, the government has not controverted. As he pointed out, the certificates were “never set aside” for the appellants’ “individual benefit,” but instead remained in the “custody and control” of the bank as security for the loan to Western; the bank would not have acceded to a demand by the appellants for the delivery of the certificates to them since the certificates “would and could have been released only upon payment of the corporate loan of $346,000.00.”
 

 “Looking to the substance of the transaction rather than its form and viewing this series of interrelated steps as an integrated whole,”
 
 McKelvy
 
 v.
 
 United States,
 
 478 F.2d 1217, 1224, 201 Ct.Cl. 557 (1973), the conclusion is inescapable that the only property Western distributed to its shareholders on March 18, 1974, was the unpledged certificate of deposit for $116,000. The shareholders did not receive and could not have received the two other certificates, which at all times remained in the custody and complete control of the bank as security for the loan to Western. Indeed, it was far from certain that the appellants ever would obtain the certificates, since the corporation’s financial condition might result in its default on the loan and the bank’s consequent foreclosure of the pledge of the certificates.
 

 
 *1578
 
 This case is similar to and controlled by
 
 Avery v. Commissioner,
 
 292 U.S. 210, 54 S.Ct. 674, 78 L.Ed. 1216 (1934). There a corporation “without exception,” 292 U.S. at 212, 54 S.Ct. at 675, followed the practice of mailing dividend checks on the last day of the month in which the dividend was payable or, in the case of shareholders who were officers or employees, of distributing the checks on the first business day of the following month. The result was that no shareholder ever would receive his check before the latter date. Avery was president and a large stockholder of the corporation. The case involved dividends payable on December 31, 1924 and 1929, the checks for which the treasurer of the company had on those dates but which he did not deliver to Avery until January 2, 1925 and 1930.
 

 The Commissioner included the dividends in Avery’s income for 1924 and 1929. He acted pursuant to a regulation that, like the regulation before us, provided that
 

 [a] taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands.
 

 Treas.Reg. 65, art. 1541 (1924). The Supreme Court held that the Commissioner’s action was “erroneous” because
 

 [i]n the disclosed circumstances the dividends cannot properly be considered as cash or other property unqualifiedly subject to the petitioner’s demand on December 31st. It was the practice of the Company to pay all dividends by checks not intended to reach stockholders until the first business day of January; there is nothing to show that petitioner could have obtained payment on December 31st, he did not expect this and the practice shows the company had no intention to make actual payment on that day. Nothing indicates that it recognized an unrestricted right of stockholders to demand payment except through checks sent out in the usual way. The checks did not constitute payments prior to their actual receipt. The mere promise or obligation of the corporation to pay on a given date was not enough to subject to petitioner’s unqualified demand “cash or other property”; and none of the parties understood that it was.
 

 292 U.S. at 215, 54 S.Ct. at 676.
 

 For similar reasons the two pledged certificates of deposit were not, within the meaning of Treasury Regulation 1.301-l(b), “unqualifiedly made subject to [the appellants’] demands” on March 18, 1974. Just as in
 
 Avery,
 
 there was no way in which the shareholders could have obtained the certificates on that date. Indeed, the present case is an even stronger one than
 
 Avery
 
 for not applying the constructive receipt doctrine. In
 
 Avery
 
 it was clear that Avery would obtain the dividend checks on January 2, whereas here, as we have explained, it was unclear whether the appellants ever would obtain the two pledged certificates of deposit.
 

 The doctrine of constructive receipt is inapplicable for the further reason that a provision of Regulation 1.451-2(a) precludes its application here. That provision states that “income is not constructively received if the taxpayer’s control of its receipt is subject to substantial limitations or restrictions.” The control and authority of the bank over the certificates of deposit described above constituted “substantial limitations or restrictions” upon the appellants’ control over receipt of the certificates.
 
 Cf. McKelvy,
 
 478 F.2d at 1227-28.
 

 3. The Claims Court cited and the government relied upon two cases:
 
 McKelvy
 
 and
 
 Soreng v. Commissioner,
 
 158 F.2d 340 (7th Cir.1946).
 
 Soreng
 
 is distinguishable because the taxpayers, unlike the appellants here, had control or custody of the money or property that the Commission treated as a taxable dividend.
 
 McKelvy
 
 is factually closer to the present case in that the shareholders there may not have had the requisite custody or control of the corporate distribution, but that was not the basis of the court’s decision.
 

 In
 
 Soreng,
 
 the shareholders received checks from the corporation covering liquidating dividends, which they deposited in their personal bank accounts. The next day, pursuant to their agreement with a third person, they wrote checks to the cor
 
 *1579
 
 poration for the identical amounts. The court rejected the shareholders’ contention that the dividend checks they received were not “unqualifiedly made subject to their demands,” since there was “no rational basis for a holding that the dividends received by the petitioners are not includable in gross income merely because they of their own accord entered into a contract with a third party as to the manner of their disposition when received.” 158 F.2d at 341.
 

 In
 
 McKelvy,
 
 the corporation issued its checks to the shareholders, who immediately endorsed the checks back to the corporation, which treated the amount thus received as loans from the shareholders. The Court of Claims held that the shareholders had realized a dividend upon receipt of the checks because such receipt was not a distribution of “money” and therefore not excepted from taxation by section 1375(f) of the Code.
 

 Neither of these cases, therefore, deals with the issue before us, and they are not pertinent precedents here.
 

 Stiles v. Commissioner,
 
 69 T.C. 558 (1978), offers some support for our conclusion. In
 
 Stiles,
 
 a corporation placed in trust a portion of the proceeds a shareholder was entitled to receive upon the redemption of his shares. The court held that the shareholder had not constructively received those funds because the payment to him of the trust funds was “subject to substantial restrictions.” 69 T.C. at 564. The bank’s control of the certificates of deposit is comparable to the restrictions upon the payment of the trust funds that existed in
 
 Stiles.
 

 B. We agree with the Claims Court that the issuance of the $116,000 certificate of deposit to the appellants on March 18, 1974, constituted taxable income to them.
 

 Under section 1375(f) the only way that Western could have made a tax-free distribution to its shareholders of the $116,000 portion of its 1973 undistributed income was by making a “distribution of money” “on or before” March 15, 1974. The record is undisputed that the “distribution” of the $116,000 certificate was made on March 18, 1974, not March 15. It therefore did not constitute a tax-free distribution. Where, as here, Congress has specified the precise terms upon which a taxpayer may obtain an exception to normal tax treatment, the taxpayer must comply strictly with those conditions.
 
 Cf. New Colonial Ice Co. v. Helvering,
 
 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L.Ed. 1348 (1934);
 
 McKelvy,
 
 478 F.2d at 1228 (referring to § 1375(f) as a “limited” provision).
 
 See generally
 
 1J. Mertens,
 
 Law of Federal Income Taxation
 
 §§ 3.07-.08 (rev. ed. 1982).
 

 The appellants did not constructively receive the $116,000 from Western on March 15,1974. On that date the company did not have enough money to have purchased the certificate. In opening its bank account on March 15, Western deposited only $1,938. “[L]ack of available funds by a corporation to pay a dividend does constitute a substantial limitation to the shareholder’s control of the funds in question.”
 
 McKelvy,
 
 478 F.2d at 1227;
 
 see Newmark v. Commissioner,
 
 311 F.2d 913, 915 (2d Cir.1962).
 

 Western did not obtain the funds to purchase the certificate until March 18, 1974, when the bank credited Western’s account with $346,000. Although the appellants contend they could have obtained from the bank the money to purchase the certificate on March 15, the record does not support that assertion. The simple fact is that no distribution of the funds the certificate represented was or could have been made to the appellants until March 18, 1974, and that was too late to qualify it for tax-free treatment under section 1375(f).
 

 CONCLUSION
 

 The Claims Court correctly granted the government’s motion for summary judgment with respect to the $116,000 certificate of deposit. The court should have denied the government’s motion for summary judgment with respect to the two $115,000 certificates of deposit and granted the appellants’ motion for summary judgment on this claim.
 

 Accordingly, the judgment of the Claims Court is affirmed in part and reversed in part, and the case is remanded to that court with instructions to grant the appellants’
 
 *1580
 
 motion for summary judgment with respect to the two $115,000 certificates of deposit.
 

 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.