KEY LARGO SHORES PROPERTIES, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40529.   Promulgated December 31, 1930.

*W. S. Hammers, Esq.*, and *P. R. G. Sjostrom, Esq.*, for the petitioner.

*Arthur H. Murray, Esq.*, for the respondent.

## OPINION.

ARUNDELL: Petitioner having filed a return for the year 1925 in which it reported income from the sale of real estate according to the installment method provided for by section 212(d) of the Revenue Act of 1926, now seeks to report the sale in a manner so as to first recover its capital outlay and, in fact, so as to show a loss. The respondent in auditing petitioner's return accepted the installment method of accounting for the sale of the Key Largo tract, but used a percentage different from that of petitioner in determining the portion of the initial payment to be reported as income, and thereby increased the tax. There is no issue as to the figures used by the respondent.

The respondent contends that, the petitioner having elected a particular method of reporting income, the election is binding and it can not afterward choose a different basis. As authority for this position he cites *R. Downes, Jr.*, 5 B. T. A. 1029; *Gilbert W. Lee*, 6 B. T. A. 135, and other cases in which taxpayers were denied the right to change the basis of reporting income.

The cited cases either presume or decide that the method first employed by the taxpayer served to reflect the true income and proceed on the theory that in such cases it is in the interest of administrative expediency to require adherence to the method first elected. There is no doubt considerable to be said in favor of the argument made because to permit taxpayers to change at will the basis of reporting income merely because subsequent events might produce a lower tax under one method than under another would result in an ever widening circle of confusion in the computation of taxes, with consequent delay in closing out tax cases.

The chief foundation of the rule applied in the above cases, namely that the first elected method correctly reflected income, does not exist in the present case, as a glance at the facts will clearly show. In the instant case, under the installment method the petitioner is being taxed on 89.8 per cent of all the money it received in the taxable year, on the theory that the contract price of $361,050 would be paid which would result in a profit of $324,440. But before the close of the year it was clearly evident that some of the factors used in making such a computation were erroneous by reason of the fact that the second mortgage which was included in the contract price was of no value. The purchasers were financially irresponsible, and before the year was out they were unable to meet their first interest payment. The land itself was of insufficient value to afford any security for the debt covered by the second mortgage. The evidence establishes, contrary to the contention of the respondent, that it was

reasonably certain within the year 1925 that the second mortgage was worthless and that the purchaser of the land would make no further payment on its indebtedness. The entire transaction was initiated and completed within a short period and was one of the typical land exploitation schemes that flourished during the Florida land boom. Land prices, which had mounted dizzily in the early part of the year, were skidding rapidly downward before the year was out. November found the purchaser of petitioner's tract unable to meet the interest payment due and with no prospect of selling lots at any price, because of the deflation that by that time was under full swing. While the petitioner took no formal action toward foreclosure until the early part of 1926, it is established that its officers were fully aware of the situation before the close of that year. In view of the situation that existed in the latter part of 1925, it is obvious that the second mortgage should be entirely excluded from any computation of the profit realized or to be realized on the transaction. Under the facts here, to presume that the contract price less cost represented the profit to be realized and to determine the tax on that basis would be to completely ignore the facts known at the end of the tax year.

Under the Revenue Acts various methods of reporting income may be adopted by taxpayers, but all are designed to correctly reflect the true income in order that a just tax may be levied and collected. If a method used by a taxpayer does not clearly reflect income, the respondent may determine the income according to a method which in his opinion does clearly reflect it. Section 212, Revenue Act of 1926. This in itself is sufficient to demonstrate that it was not intended that taxpayers should be irrevocably bound by the election of a method of reporting when that method is erroneous. The effect in this case of requiring adherence to the basis originally adopted by the taxpayer would be to set up and tax, as income, an amount which in fact is not income. Neither administrative rules nor the forceful arguments in favor of administrative expediency can create income where in fact there is none, and, after all, it is only income that is to be taxed. In our opinion the installment basis when applied to the facts in the present case does not reflect the taxpayer's income.

Excluding the second mortgage from consideration, the essence of what occurred here is that the taxpayer purchased land, paying in cash $36,610 and giving a first mortgage for $53,250. Within the year it sold the land, receiving $82,860 in cash and the purchaser assumed the mortgage of $53,250. In this view of the transaction it is clear that it is improper to attempt to apply the installment sales method of computing income. The net result of the transaction

was petitioner made a profit of the difference between $36,610 and $82,860, or $46,250, and this in our opinion should be included in gross income for the year.

Petitioner contends that it was not relieved of its obligation on the first mortgage and for that reason it has not recovered its cost. It is pointed out that on foreclosure sale the property was purchased for $1,000. However, it is not shown that the purchaser on foreclosure did not assume the existing mortgage, which is usually the case. Moreover, it is not shown that the land itself was not of sufficient value to be security for the mortgage. It is true that there is a statement in the record made by petitioner's president that the land was not worth as much as the first mortgage, but we do not feel warranted, after considering the entire record, in going that far.

In our opinion the application of the installment sales method is improper in this case as it does not correctly reflect income. We are further of the opinion that petitioner's gross income from the Key Largo transaction in 1925 was $46,250.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

Sternhagen, Trammell, and Murdock concur in the result only.