GANSON DEPEW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 50860.   Promulgated January 6, 1933.

*Ralph M. Andrews, Esq.*, and *W. W. Grimes, Esq.*, for the petitioner.

*George D. Brabson, Esq.*, for the respondent.

OPINION.

Van Fossan: The primary issue in this proceeding is whether or not the transaction relating to the sale of the petitioner's stock in the Rogers-Brown Iron Company (hereinafter called the company) to the Central Securities Company was consummated in 1925 or 1926. The petitioner contends that such transaction resulted in a loss and that the loss was sustained in 1926. After challenging the fact that a loss actually occurred, the respondent asserts that the terms of the contract by which the petitioner disposed of his stock were performed within the year 1925.

In order to arrive at a proper conclusion as to both issues it is pertinent to review briefly the circumstances giving rise to the sale of the petitioner's stock. Prior to 1920 the Rogers-Brown Iron Company was a prosperous manufacturer of pig iron. Beginning with that year, however, the industry suffered a serious depression. The company's outlook was further limited by increased freight rates and taxes. It owned a large Minnesota ore property, the capacity of which far exceeded the reduced demand of the company's business. The operating and carrying charges of the mine rapidly absorbed the company's earnings and made inroads on its surplus, so that in 1925 the company was confronted with its inability to pay interest on its bonded indebtedness. Under such threatening circumstances it became imperative that the company should be refinanced.

The M. A. Hanna Company, an iron company of Cleveland, Ohio, desired to secure the mine property and made certain proposals to the company's stockholders which resulted in a multilateral agreement dated September 24, 1925, and executed by the holders of more than 80 per cent of the outstanding stock of the company; by the company itself; by the Hanna Company; by certain banks to which the company was indebted; by The Marine Trust Company as escrow agent of the stockholders and the Central Trust Company; and by the last named company and the Central Securities Company, the corporations through which the refinancing was to be accomplished. By the terms of that agreement the stockholders were to deposit with the escrow agent their duly endorsed certificates of stock in the company, to be delivered to the Securities Company upon payment of the purchase price therefor and also upon the fulfillment of certain other provisions of the contract, but such stock was " to be returned to said respective stockholders if, without default on the part of the Rogers stockholders or the Rogers Company, the transactions provided for in this Agreement shall not be consummated on or before February 1, 1926."

About October 15, 1925, the stockholders and the Securities Company, through their representatives, agreed to advance the date of closing the transaction as to certain stockholders, including the petitioner, from February 1, 1926, to January 2, 1926, and to that end all stock of the company subject to the agreement was to be deposited with the escrow agent on or before the close of business on December 30, 1925, and likewise the checks dated January 2, 1926, issued by the Securities Company in payment for certain of the stock, including that of the petitioner, were also to be so deposited. Pursuant to the agreement the petitioner deposited his stock certificates with the escrow agent on December 28, 1925. On December 30, 1925, the Securities Company notified the escrow agent to deliver the former's checks to the stockholders, a part on that date and a part on January 2, 1926. On January 4, 1926, the petitioner received the check of the Securities Company from the escrow agent.

If the petitioner did not receive payment for his stock either actually or constructively during the year 1925, it is obvious that he is not subject to tax for that year. · It is stipulated that he did not receive it actually. The question then arises whether or not delivery of the check to the escrow agent under the conditions set forth constituted constructive receipt by the petitioner. We think not.

An escrow agent is not a general agent. His powers and duties are limited strictly by the terms of the escrow agreement. *Citizens Nat. Bank of Roswell* v. *Davisson*, 229 U. S. 212. Thus delivery to The Marine Trust Company of the Securities Company check was delivery to its principal, the petitioner, only when all the terms and conditions of that agreement were completely and explicitly fulfilled. In that portion of the " Principal Agreement " relating to escrow, it was specifically agreed that no delivery of either the stock certificates or check should be made until January 2, 1926. Thus, in so far as the petitioner was concerned, the escrow agent was prohibited from completing the transaction before that date.

It is entirely conceivable that something might have happened in the interval between December 30, 1925, and January 2, 1926, that would have prevented final consummation of the transaction.

The facts in this case do not bring it within the rule of constructive receipt as defined by the respondent in article 51 of Regulations 65 and 69, which is as follows:

ART. 51. *Income not reduced to possession.*—Income which is credited to the account of or set apart for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. A book entry, if made, should indicate

an absolute transfer from one account to another. If the income is not credited, but is set apart, such income must be unqualifiedly subject to the demand of the taxpayer. * * *

The case at bar is clearly distinguishable from *William Holden*, 6 B. T. A. 605, upon which the respondent relies. There the sale in question was completed in 1919, and the purchase price was on deposit in the bank and available to the petitioner in that year. We said in that case:

* * * It was only because of instructions which had been issued to the bank at the instance of the petitioner that it was not paid. Had such instructions been a part of the contract there might have been some basis for a determination that the money was not received in 1919 by the petitioner, who reported his income upon a cash receipts basis. As to this we express no opinion. Here, however, was no contract or enforceable modification of the original contract; nothing more than an instruction (without consideration) at the request of the petitioner that payment be withheld.

In the above case the terms of the escrow agreement were performed in 1919. The instructions to defer payment until January 1, 1920, were given subsequent to the completion of the contract.

Here the authority to pay to the petitioner was contained in the contract itself dated September 24, 1925, and modified October 15, 1925. The consummation date of the original contract was set at February 1, 1926. As to the petitioner that date was advanced to January 2, 1926, under the supplemental agreement. We are not concerned with those stockholders who received their checks from the escrow agent on December 30, 1925. But in the case of all stockholders the escrow agent was directed not to deliver either the certificates of stock or the checks in payment thereof until all the transactions covered by the contract had been completed. In the *Holden* case, *supra; Clara Brunton, Executrix*, 15 B. T. A. 348, and in other cases cited by the respondent, the attempt to avoid or evade taxation was obvious. In the case at bar there is no such suggestion or suspicion. If the conditions of the agreement had not been met by January 2, 1926, the date fixed, it was the duty of the escrow agent to retain both the certificates of stock and the checks until the contract was complied with or to return them to their respective owners upon the demand of either party. By reason of the actual delivery on January 2, 1926, of the stock certificates and the check dated that day, we may assume that all conditions imposed in the contract had been fulfilled and the transactions therein provided for had been consummated, but we have no ground for concluding that such a situation existed prior to January 2, 1926.

The respondent contends further that the petitioner was not entitled to a deduction for a loss because there is no evidence that his stock became worthless in 1926. Petitioner's claim is not based on

**524**

an alleged worthlessness of the stock. On the contrary, it is shown that it had a considerable book value during 1925 and 1926. However, if heroic measures were not taken, the condition of the industry, and the business outlook of the Rogers-Brown Company, made it exceedingly doubtful that any of the stock would long continue to possess a value. The impending foreclosure of mortgages and the consequent liquidation of the corporation would soon have consumed the remaining surplus and dissipated any value, actual or potential, which the stock might have. Not infrequently the owners of the majority holdings in a corporation are compelled to sacrifice part of their holdings and relinquish majority control to save the balance of their investment. That is what was done here. The refinancing of the Rogers-Brown Iron Company was an emergency measure undertaken in order to save the company from bankruptcy and to salvage some value from the remaining 20 per cent of the stock still held by the petitioner and other stockholders. Respondent suggests in his brief that the sale was nominal and not actual. The evidence fails to support this position. The stipulated facts show that the 240 shares of stock in controversy were sold for one cent a share and that they cost the petitioner $24,000 prior to March 1, 1913. The petitioner never reacquired any part of the stock so sold and acquired no other stock or interest in the Rogers-Brown Iron Company. There is no evidence of lack of good faith. The fact that can not be gainsaid is that upon the completion of the transaction on January 2, 1926, the petitioner had suffered a loss. The amount of this loss was $23,997.60 and, as we have held, that loss is deductible from his gross income for 1926.

*Decision will be entered under Rule 50.*