REBECCA J. MURRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EDWARD J. MURRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 40174, 40176, 58857, 58858. Promulgated July 6, 1933.

*W. S. Wiley, Esq.*, and *G. Q. D'Albini, C.P.A.*, for the petitioners. *Alva C. Baird, Esq.*, for the respondent.

OPINION.

MARQUETTE: The controversy here is whether the profit derived from the sale of the capital stock of the Herald Publishing Co. should be reported on the installment basis, or should be reported entirely in the year 1926 upon the theory that the sale was a closed and completed transaction in that year.

Section 212 (d) of the Revenue Act of 1926 authorizes taxpayers to report income on the installment basis in certain circumstances, viz.:

\* \* \* In the case (1) of a casual sale or other casual disposition of personal property for a price exceeding $1,000, or (2) \* \* \*, if in either case the initial payments do not exceed one-fourth of the purchase price, the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above described in this subdivision. As used in this subdivision the term "initial payments" means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made.

Respondent contends that the sale of the stock was completed in 1926, and that the funds placed in escrow, together with the promissory note, were constructively, if not actually, received by the petitioners. The petitioners contend the transaction was a casual sale of personal property; that less than 25 percent of the purchase price was received in 1926, and that they reported income on a cash receipts and disbursements basis; that the contract was executory in that it had five years to run from October 1, 1926, and that they did not have unrestricted benefit of management or unqualified use, control or disposition of the unpaid balance. They further contend the trust company was not in theory of law the agent of the petitioners, and that income derived from securities was paid to them in lieu of interest on the promissory note; that they had the responsibility of any loss resulting from the investment of the escrow funds; and that under the terms of the agreement there was a possibility that Dennis would derive some profit from the management of the trust.

Regardless of the terminology that the parties have used in designating the character of this sale, that is, whether it be called a "closed transaction", a "completed sale", or a "casual sale", we are convinced that this is the type of transaction that the Congress had in mind when it provided an election for reporting income from the sale of personal property when less than 25 percent of the

purchase price was paid as an initial payment or payments. The facts are undisputed that during the year 1926 the petitioners received $30,900 in cash as the initial payment on stock which they sold for $130,900. The balance of the purchase price was placed in escrow, the receipt of which by the petitioners was conditioned upon their remaining out of the newspaper and publishing business for a stated period of time.

Respondent lays great stress upon the fact that there was nothing for the petitioners to do under the contract except to await the passage of a period of time, but the value that the purchaser placed upon this portion of the contract is measurable by the amount of security that he required to be held in escrow in order to protect his interest. It is clearly stated in the agreement that Dennis was paying a large sum of money and that the good will which he was acquiring would be wholly destroyed or impaired if he could not prevent the petitioners from reentering the field in a competing business. We believe that this condition was a vital part of the contract; definite, real, and not dependent in any way upon the whim or caprice of the petitioners, such as existed in the case of *William Holden*, 6 B.T.A. 605. The condition is virtually the same as that found in *Otto Braunwarth*, 22 B.T.A. 1008, where Liberty bonds were placed in escrow, payable so much per year for five years, providing the petitioner had not entered into a competing business. In that case we held that the amounts received in each year were income to the extent that they exceeded the capital investment in the business sold.

In *Ganson Depew*, 27 B.T.A. 515, the petitioner in 1925 deposited certain certificates of stock in escrow, duly endorsed, receiving the purchase price in 1926. The purchaser had deposited the purchase price in escrow in 1925, and the question arose as to whether the loss sustained by the petitioner was realized in 1925, when the deposits were made under the escrow agreement, or whether the loss was realized in 1926, when the purchase price was paid. The Board held that the loss was sustained in 1926 because the petitioner had neither actually nor constructively received the purchase price as a result of delivery to the escrow agent. To the same effect is our decision in *K. E. Merren*, 18 B.T.A. 156, affirmed on another point in *Merren v. Commissioner*, 51 Fed. (2d) 44.

In *Mrs. H. C. Walker, Jr.*, 23 B.T.A. 1, certain interests in oil properties were sold for a consideration of $200,000, to be paid out of the proceeds from oil produced from the land. The oil proceeds were to be placed in escrow at a designated bank and the bank was to pay the vendors $50,000 per year beginning in 1921. The land proved to be very productive and the proceeds in 1921 amounted to

practically the full purchase price. The petitioners reported the income from the transaction on the installment basis and each claimed a deduction for depletion. The respondent disallowed the deduction and the petitioners appealed, contending that the income was taxable to them in the years in which the proceeds were deposited with the escrow agent. The Board held that the proceeds constituted income to the petitioners for the years in which received and that, having made their election to report income on the installment basis, they could not change and report on a different basis, when so doing would result in throwing a large part of income back in a prior year for which assessment and collection would be barred by the statute of limitations. To the same effect is *Commissioner* v. *Moore*, 48 Fed. (2d) 526 (certiorari denied, 284 U. S. 620), reversing the Board in *L. C. Moore*, 11 B.T.A. 979; and *Commissioner* v. *Garber*, 50 Fed. (2d) 588, reversing the Board in *M. C. Garber*, 11 B.T.A. 979.

In these proceedings the petitioners have elected to report income from the sale of the stock and their newspaper business upon the installment basis, as provided for in the above quoted section of the Revenue Act of 1926. It must be admitted that they realized no more income in 1926 than the amount which they reported, unless it can be said that the receipt of the money and note by the escrow agent constituted receipt by the petitioners themselves. We find no justification in the agreement for holding that the trust company acted as agent for either party to the exclusion of the other; rather we believe that the trust company acted in its proper capacity as a disinterested party obligated to see that the terms of the agreement were performed, and upon performance by the parties pay over to either or each of them the property specified in the agreement. Until there was performance by the party of the agreed conditions, there could be no transfer by the escrow agent; upon performance the escrow agent was required to turn over the property specified to the party entitled thereto, and, therefore, as each annual payment was made by the escrow agent to the petitioners, they realized a profit upon the sale made in 1926.

In view of the foregoing discussion and cited cases, it is our opinion that the petitioners have properly reported income from this sale on the installment basis, and that they should be taxed accordingly.

In determining the petitioners' tax liability for 1927 due regard should be given to the stipulation relating to the amount of profit received by each petitioner in 1927 and to the error conceded by respondent with respect to the disallowance of a deduction for rental commissions.

*Decision will be entered under Rule 50.*