BLAINE L. STONER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67525. Promulgated February 1, 1934.

*J. Henry O'Neill, Esq.*, for the petitioner.

*Dean P. Kimball, Esq.*, and *Edward C. Adams, Esq.*, for the respondent.

## OPINION.

TRAMMELL: It is the contention of the petitioner that $50,000 of the total consideration received by the seller from the buyer on May 29, 1929, was turned over to the seller impressed with a trust or restriction imposed by the buyer and for that reason it did not constitute a part of the gross income until it was released from the restriction. Under the terms of the contract it was agreed that the seller would deduct from the purchase price a sum not less than $50,000 and would deposit such sum in the bank, subject to the conditions of the contract. This provision of the contract was carried out and the $50,000 was actually paid to the seller and thereafter the seller deposited $50,000 in a bank, subject to the conditions of the quoted provision of the contract. That sum was for the purpose of guaranteeing that certain things would be done.

The petitioner relies upon the case of *Cleveland Trinidad Paving Co.*, 20 B.T.A. 772; affd., 65 Fed. (2d) 85. In that case there was a contract which provided that a municipality should withhold from the consideration payable to the contractor upon completion of a paving contract a certain sum to secure the contractor's obligation to guarantee maintenance of the paving for a period of years. We held that the contractor did not have an unqualified right to receive the full consideration upon the completion of the contract and that therefore the amount withheld was not income to him at that date. But in this case the seller of the property actually received the full consideration, including the $50,000, and after receiving it deposited it in the bank. It became the seller's money and not the money of the purchaser. The taxpayer, that is, the seller, received interest on the money.

In the case of *North American Oil Consolidated* v. *Burnet*, 286 U.S. 417, the taxpayer received in 1917 certain moneys the right to which was then being litigated in court. Though the taxpayer's title was uncertain and contingent upon the outcome of the litigation, it had the use of the moneys and the court held that they were taxable income in 1917, when received. In the case of *Mead Construction Co.*, 3 B.T.A. 438, where a contractor had a contract with a municipality for pavement construction, the contract provided that the contractor after completion of the work should give the municipality a certain indemnity undertaking in the form of city bonds, United States bonds, or cash, at the option of the contractor. When cash was used it was withheld from moneys due the contractor. In deciding that the full contract price was income we said:

If, in the present appeal, the contractor in fact received the contract price and in fact transferred cash or bonds to the city for deposit as required, the contract price would have been income notwithstanding the deposit or pledge for proper maintenance. But the procedure was simplified and the city retained the deposit fund in the first instance. The fact that it did so with the heavy hand of its municipal power does not change the taxpayer's contractual right to the full compensation and its obligation to make deposit. The legal effect is quite the same.

The petitioner in this proceeding argues that the case at bar is distinguishable from the *Mead Construction Co.* case, *supra*, because in the *Mead* case there was no restriction on the right of the taxpayer to receive compensation in full. However, we can not overlook the fact that the taxpayer in this case did actually receive compensation in full and was required to provide an indemnity fund after receipt of full compensation. In the case of *Federal Development Co.*, 18 B.T.A. 971, there was a sale of real estate and the seller promised to oust a tenant within a certain period. Title to the property was passed and the consideration paid, except $50,000 which was retained by the purchaser to guarantee the performance of the seller's agreement to oust the tenant. As in the case at bar, interest on the $50,000 was paid to the seller. We held that this sum of $50,000 was taxable income to the seller, although, unlike the case at bar, it was not actually paid to the seller within the taxable year. In that case we said:

The fact that in concluding the transaction the Federal Reserve Bank, instead of paying over the entire amount of the purchase price and then receiving back a deposit of $50,000 from petitioner, retained that sum from the total makes no difference. The result is the same in any event. The retaining of this amount was a use of it as funds of the petitioner in carrying out the latter's obligation to make a deposit. The sum was held from that time forward as money belonging to petitioner, interest being paid the latter for the time it was held. The fact that one who sells property guarantees the purchaser against some contingency arising in a future year and makes a

deposit as security for the guarantee does not lessen by the amount of the guarantee or the amount of the deposit the profit which he had made on the sale. If in such case the happening guaranteed against takes place in the following year and a portion of the deposit is in consequence lost, the result is one affecting income for that year to the extent of the loss.

In view of the authorities aforesaid it is our opinion that the $50,000 received by the petitioner as a part of the purchase price of the property and deposited by it to guarantee against the happening of certain contingencies should be included in the gross income of the petitioner for the year involved. Cf. *Erwin R. Effler*, 29 B.T.A. 784.

*Judgment will be entered under Rule 50.*