Ernest Fandrich and Georgia Fandrich v. Commissioner.
Fandrich v. Commissioner
Docket No. 54334.
United States Tax Court
T.C. Memo 1956-134; 1956 Tax Ct. Memo LEXIS 162; 15 T.C.M. (CCH) 677; T.C.M. (RIA) 56134; May 31, 1956
*162 Held: Petitioners' election to report gain from the sale of real estate by a method other than the installment basis is binding and they are not now entitled to a recomputation of tax on the installment method. Held further: Petitioners are liable for addition to tax for substantial underestimation within the meaning of section 294(d)(2), Internal Revenue Code of 1939. John Richardson, Esq., for the petitioners. George E. Van Roekel, Esq., for the respondent. BRUCE *163 Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency of $10,602.80 in the income tax of petitioners for the taxable year ended December 31, 1950 and determined an addition to tax of $643.82 for substantial underestimation. Two questions are presented for decision: (1) whether petitioners are entitled to have the gain from the sale of land taxed to them on the installment basis; and (2) whether petitioners are liable for an addition to tax for substantial underestimation under section 294(d)(2), Internal Revenue Code of 1939. Findings of Fact The stipulated facts are so found. Petitioners Ernest and Georgia Fandrich, husband and wife, reside in Beulah, North Dakota. They filed a joint Federal income tax return for the year 1950 with the collector of internal revenue for the district of North Dakota. On July 31, 1950 petitioners contracted with the Truax-Traer Coal Company of Chicago, Illinois to sell 680 acres of land located in Mercer County, North Dakota. The pertinent provisions of the contract are as follows: "CONTRACT FOR DEED "THIS AGREEMENT, Made and entered into this 31st day of July, 1950, by and between Georgia Howard Fandrich *164 and Ernest Fandrich, her husband, of Hazen, North Dakota, parties of the first part, and Truax-Traer Coal Company of Chicago, Illinois, party of the second part, "WITNESSETH, That the said parties of the first part, in consideration of the covenants and agreements of said party of the second part, hereinafter contained, hereby sells [sold] and agrees [agreed] to convey unto the said party of the second part, or its assigns, by deed of warranty upon the prompt and full performance of said party of the second part, of its part of this agreement, the following described premises, situated in the County of Mercer and State of North Dakota, to-wit: * * *
"And the said party of the second part, in consideration of the premises, hereby agrees to pay said parties of the first part, as and for the purchase price of said premises, the sum of One Hundred and Twelve Thousand and no/100 (112,000.00) Dollars, in the manner and at times following, to-wit: The sum of $33,600.00, to be paid in cash, upon the execution of this agreement, and the balance thereof to be paid on or about the 5th day of January, 1951. And that the said party of the second part will pay the taxes for the *165 year 1950, and all subsequent taxes. It is further agreed that the said parties of the first part, will reserve, in their deed, all gas and oil rights, but said reservation shall not include any other minerals. "It is further agreed that the said parties of the first part shall have a lease to said land for a period of three years, that is during the cropping years of 1950, 1951, and 1952, the same to be tax free, without further consideration; however, the party of the second part shall have the right to enter said lands, and to strip not to exceed 40 acres during each of said years. "But should default be made in the payment of said several sums of money, or any or either of them, or any part thereof, or in the payment of taxes or any part thereof, or in any of the covenants herein to be by said party of the second part kept or performed, then this agreement to be void, at the election of said party of the first part, time beng [being] the essence of this agreement. And in case of default by said party of the second part, in whole or in part, in any or either of the covenants of this agreement to be by it kept and performed they hereby agree upon demand of said parties of *166 the first part, quietly and peacably [peaceably] to surrender to their possession of said premises and every part thereof, it being understood that until such default, said party of the second part is to have possession of said premises. "IN TESTIMONY WHEREOF. Both parties have hereunto set their hands and seals the day and year hereinbefore written. "Georgia Howard Fandrich, Ernest Fandrich, Parties of the first part, Truax-Traer Coal Company By A. H. Truax, Its President Party of the second part "(SEAL) Attest: D. Roodewig Its Ass't Secy." The provisions in the contract which provided for a down payment of $33,600 upon execution of the sale agreement and for the balance of $78,400 to be paid on January 5, 1951, were carried out and the payments were so made. Petitioners reported the sale of the 680 acres of land on their 1950 Federal income tax return as a completed transaction. Georgia had obtained the 680 acre tract of land from her parents by an inter vivos gift. Petitioners improperly reported on their 1950 Federal income tax return the basis of said property as $61,200, the alleged fair market value of such property on the date of death of Georgia Fandrich's *167 surviving parent. The proper basis of said property for the purposes of the instant proceeding is $14,378.48, which amount represents the basis of the property to Georgia Fandrich's parents. On September 20, 1950, petitioners signed a declaration of estimated tax for the year 1950. This declaration was filed on January 2, 1951, showing the estimated 1950 tax to be $5,500, which amount was remitted to the collector of internal revenue for the district of North Dakota on that date. Petitioners' income tax return for 1950 dated February 3, 1951 and filed March 1, 1951, showed income tax due of $5,627.52. The difference between this amount and the $5,500 remitted with the declaration - a sum of $127.52 - was remitted to the collector of internal revenue on March 1, 1951. A notice of deficiency was mailed to petitioners on July 15, 1954 wherein respondent made an adjustment to reflect a change in the basis of the 680 acres of land sold during the summer of 1950. Respondent determined that the correct basis for the land was the basis to the donor, or $14,378.48. Subtracting this amount from the selling price of the property, respondent determined a gain of $97,621.52. Taking into account *168 50 per cent of this amount, in accordance with section 117(b) of the Internal Revenue Code of 1939, respondent increased the taxable capital gain reported from $25,400 to the corrected figure of $48,810.76 and determined the tax due to be $16,230.32. Respondent also determined that petitioners substantially underestimated their estimated tax for the year ended December 31, 1950, and determined under section 294(d)(2) an addition to tax of $643.82. Opinion Petitioners assigned as error the action of the Commissioner in holding that the taxpayers may not report the income from the sale of the land in question on the installment method, and in holding that petitioners are subject to an addition to tax under section 294(d)(2). The principal issue for decision relates to the method of reporting the capital gain from the sale of 680 acres of land for a total consideration of $112,000. Petitioners reported the sale on their 1950 return as a completed transaction. They now contend that since only one payment of $33,600 was made in 1950 and the balance was paid in 1951, they are entitled to have their tax computed on the installment basis under section 44(b) of the Internal Revenue *169 Code of 1939. Respondent, on the other hand, maintains that the entire amount of the gain is taxable in 1950 because petitioners chose to report the sale as a completed transaction on their 1950 Federal income tax return and did not elect to report the sale on the installment method. Section 44(b)(2) provides: "Sec. 44. INSTALLMENT BASIS. * * *
"(b) Sales of Realty and Casual Sales of Personality [Personalty]. - In the case * * * (2) of a sale or other disposition of real property, if in either case the initial payments do not exceed 30 per centum of the selling price (or, in case the sale or other disposition was in a taxable year beginning prior to January 1, 1934, the percentage of the selling price prescribed in the law applicable to such year), the income may, under regulations prescribed by the Commissioner with the approval of the Secretary, be returned on the basis and in the manner above prescribed in this section. As used in this section the term 'initial payments' means the payments received in cash or property other than evidences of indebtedness of the purchaser during the taxable period in which the sale or other disposition is made." The initial payment *170 in the instant case was $33,600, exactly 30 per cent of the total selling price of $112,000, and the balance of the selling price was payable, and in fact paid, to petitioners on January 5, 1951. Consequently, had they so chosen, petitioners would have been entitled to report the gain from the sale of their land on the installment method authorized by section 44(b)(2) of the Internal Revenue Code of 1939. [1] Reg. 111, sec. 29.44-3. Instead, however, petitioners chose to report the entire amount of the gain on their 1950 return and did not elect to report it on the installment basis. They are bound by that election. Pacific National Co. v. Welch, 304 U.S. 191; United States v. Kaplan, 304 U.S. 195. The "binding election" rule has been followed by this and other courts. *171 In S. Nicholas Jacobs, 21 T.C. 165, affirmed 224 Fed. (2d) 412 (C.A. 9, 1955) we said: "The short answer is that petitioner and his wife, having exercised in their 1948 income tax return the option granted them by law to report the gain derived from the transaction in controversy upon a basis other than the installment basis, may not now change to the installment basis of reporting such gain. Pacific National Co. v. Welch, 304 U.S. 191; United States v. Kaplan, 304 U.S. 195. * * *" See also Portland Oil Co. v. Commissioner, 109 Fed (2d) 479, 486 (C.A. 1, 1940); Marks v. United States, 98 Fed. (2d) 564, 567 (C.A. 2, 1938); Elmwood Corporation v. United States, 107 Fed. (2d) 111, 112 (C.A. 5, 1939); St. Paul Union Depot Co. v. Commissioner, 123 Fed. (2d) 235, 239 (C.A. 8, 1941); Keeler v. Commissioner, 180 Fed. (2d) 707, 710 (C.A. 10, 1950); Chicago Telephone Supply Co. v. United States, 23 Fed. Supp. 471, 475 (Ct. Cls. 1938); Sylvia S. Strauss, 33 B.T.A. 855; Liberty Realty Corp., 26 B.T.A. 1119; Johnson Realty Trust, 21 B.T.A. 1333. *172 United States v. Eversman, 133 Fed (2d) 261 (C.A. 6, 1943); and Scales v. Commissioner, 211 Fed. (2d) 133 (C.A. 6, 1954), reversing 18 T.C. 1263, relied upon by petitioners, are distinguishable. While in those cases the taxpayers were held entitled to the benefits of section 44(b) in reporting income from installment sales, in either case did the return of the taxpayer clearly reflect an election to treat the sales under a method other than the installment basis. In Eversman, the taxpayer reported no income at all from the sale of realty, and in Scales, the taxpayer not only did not report the transaction involved as a sale of realty, but characterized the payments as rent from a lease. We also see no merit in petitioners' contention that they are now entitled to have their tax on the gain from the sale of their land computed on the installment method because the method adopted in the 1950 return was not the correct method for reporting such income, citing Key Largo Shores Properties, Inc., 21 B.T.A. 1008. Here the method of reporting adopted by petitioners was not erroneous. The fact that the installment method would better *173 have served the purpose of petitioners does not make the method adopted by them incorrect. The inaccuracy in petitioners' return is not the fault of the method of reporting the gain but is due to the wrong basis used in computing the amount of the gain. Having elected to report the gain from the sale of their land by a method other than the installment basis and not having shown that the method adopted is otherwise erroneous, petitioners are not now entitled to have their tax for the year 1950 computed on the installment basis. Accordingly, respondent's determination with respect to this issue is approved. The remaining issue is whether petitioners are liable for an addition to tax for substantial underestimation of tax within the meaning of section 294(d)(2) of the Internal Revenue Code of 1939. Petitioners filed a declaration of estimated tax for the calendar year 1950 on January 2, 1951, showing an estimated tax of $5,500. As hereinabove determined, petitioners' correct tax liability for the calendar year 1950 is $16,230.32. Since 80% of this tax, or 66 2/3% if petitioners are assumed to be farmers for the purposes of section 294(d)(2), exceeds the estimated tax of $5,500 *174 declared by petitioners, it is held that petitioners are liable for the additions to tax provided by section 294(d)(2) of the Internal Revenue Code of 1939. DeWitt M. Sherwood, 20 T.C. 733. Decision will be entered for the respondent. Footnotes
1. The Treasury Department has expressly ruled that even if a casual sale of real property contemplates but two payments, one during the first year and one in a later year, the income may be returned on the installment basis if the payment received in the first year does not exceed the percentage of the selling price specified in the statute. G.C.M. 12148↩, C.B. XII-2, p. 57.