FRED M. STILES AND JEAN M. STILES, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3886–76.     Filed January 10, 1978.

*John D. Colliander,* for the petitioners.
*John O. Tannenbaum,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined a deficiency of $193,910.67 in petitioners' Federal income taxes for 1972. The issues are whether the redemption of petitioners' corporate stock qualifies as an installment sale under section 453,[1] and, if so, whether petitioners can now change to a cost recovery method of accounting after electing to report under the installment method.

This case was fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference.

When they filed their petition, petitioners resided in Hampton, N. H. Petitioners filed their joint Federal income tax return for 1972 with the Director of the Internal Revenue Service Center in Andover, Mass. Petitioners used the cash receipts and disbursements method of accounting for 1972.

Until 1972, petitioner Fred M. Stiles (hereafter referred to as petitioner) and Charles Rosen were the equal owners of four companies. Two of the companies, Plywood Ranch Industries, Inc. (PRI), and Fort Kent Fence Co., Inc. (Fort Kent), are corporations. The other two, Retailers Realty Trust (Retailers), and Hyway Realty Trust (Hyway), are Massachusetts business trusts. Apparently petitioners and respondent have agreed to treat the trusts as corporations for purposes of this case. Cf. sec. 301.7701–4(b), Proced. & Admin. Regs.

During 1972, petitioner and Rosen sued each other because of disputes over the operations of their companies. In settlement of those disputes, they entered into an agreement in which petitioner would sell his entire interest in the four companies to the companies themselves. Thus the companies effectively agreed to redeem petitioner's stock. See sec. 317(b). The

---

[1]Unless otherwise stated, all section numbers refer to the Internal Revenue Code of 1954, as in effect for the taxable year in issue.

agreement was executed on August 16, 1972, and provided for a total redemption price of $900,000 ($400,000 from PRI, $10,000 from Fort Kent, $440,000 from Retailers, and $50,000 from Hyway). Apparently some adjustments were later made because the total consideration is stipulated to be $845,000 ($405,000 from PRI and $440,000 from Retailers). It is also unclear whether any separate consideration was paid for petitioner's stock in Fort Kent and Hyway. We presume that although those companies were part of the entire redemption transaction, the tax consequences of the redemption of petitioner's stock in them is not at issue here.

The redemption agreement contains several warranties and representations, most of which are not pertinent to our decision. However, paragraphs 22 and 23 of the agreement are pertinent and provide as follows:

22. UNDISCLOSED LIABILITIES. STILES represents that he has no knowledge of any obligations or liabilities which are binding upon or which may be imposed upon any of the purchasers, or their subsidiaries, which he has not brought to their attention, nor does he have any knowledge of any defaults in agreements to which the purchasers or their subsidiaries are parties which he has not called to their attention.

23. UNDISCLOSED AGREEMENTS. STILES represents that he has not and will not prior to the closing enter into on behalf of any of the undersigned purchasers or their subsidiaries without their knowledge and consent any of the following types of agreement or policy: any employment agreement; any insurance policy; any lease; any purchase order; any sales order; any agreement which adversely affects them or their financial condition, property or operations; or any other agreement not (a) fully performed prior to June 30, 1972 or (b) cancellable upon not more than 30-day notice.

Any of the redeeming companies could, at its option, require that up to 75 percent of the redemption price be placed in trust to secure "against any breach reasonably anticipated of paragraphs 22 or 23." The option was in fact exercised, and $635,000 (approximately 75 percent) of the total redemption price of $845,000 was placed in trust.

The trust was established by PRI and Retailers as settlors, and petitioner selected Malden Trust Co. as trustee for the account. The trust agreement directed the trustee to invest the trust funds in insured savings accounts and certificates of deposit and in bonds or tax-exempt securities rated Baa or better. All trust income was to be accumulated for petitioner and paid to him at the end of the term of the trust. The trust agreement also

directed the trustee to distribute to petitioner $120,000 of principal each year from 1973 to 1977 and the balance on September 20, 1978.

In accordance with the redemption agreement, the trust agreement provided that the funds were placed in trust to secure and satisfy the redeeming corporations' obligations to petitioner and to secure the redeeming corporations' rights under paragraphs 22 and 23 of the redemption agreement. The trust agreement also explicitly provided for the manner in which the trustee should proceed in the event that the redeeming corporations filed a claim against the trust for breach of their rights under paragraph 22 or 23 of the redemption agreement:

TRUSTEE shall from time to time set aside under an account designated for the purposes stated and consisting of funds not distributable for the time being, the amount deemed by the TRUSTEE to be reasonably necessary to secure the SETTLOR or the CO-SETTLOR, or both, against any violation by any seller of the terms of Paragraph 22 or 23 of the [redemption] * * * agreement * * * , upon receipt by the TRUSTEE of an application by either SETTLOR or CO-SETTLOR for such segregation of funds, supported by affidavits of all those who are alleged to know facts material to such application, and by affidavit of the applicant's managing officer that diligent search has been made to obtain all evidence material to the application, and accompanied by copies of any documents alleged to have been executed in violation of the purchase agreement or which may be otherwise pertinent to the alleged violation.

TRUSTEE shall cause such investigation as it deems appropriate to be made of any such allegation of violation, and may in its discretion retain the fund set aside hereunder pending the final disposition of any litigation resting on the same allegation or allegations; or it may, if it deems proper, on its own motion, act as arbiter of the controversy arising from such allegation, or through an officer, as one member of a board of three arbiters, the other two to be named by the parties to the controversy. The expenses of any investigation, arbitration or other action required as a result of an application under this paragraph shall be borne by the unsuccessful party in the litigation or arbitration; and TRUSTEE may in its own discretion require a bond to be posted by the applicant to secure the TRUSTEE and the sellers (under said purchase agreement) against loss and damage arising from an application found to be without merit, and for expenses incurred in investigation, arbitration, and defense against such allegation or application. TRUSTEE shall also have the power to determine in its discretion that any such application is without merit and to decline to segregate funds to secure the claim as requested and to investigate or take other action to determine the merits of the subject matter; and the TRUSTEE's determination shall in such case be conclusive so far as the security remedy afforded by this trust is concerned.

Funds shall be set aside for purposes described in this Paragraph 4 only from

principal in the trust fund. No part of the income of the trust fund shall be so used.

All income realized by the Trustee from the trust shall be accumulated for or distributed to Fred M. Stiles in accordance with the provisions of Paragraph 6 hereinbelow and of the appended Schedule therein referred to.

This was the redeeming corporations' only means of security. The trust funds could not be otherwise attached by the redeeming corporations.

No claims were in fact ever filed.

Petitioner is entitled to borrow from the trust. The loans can be made only with the consent of the redeeming corporations and only to the extent necessary to defray petitioner's income tax liabilities with respect to the redemption. It is not clear from the trust agreement whether the loans could be made interest free. However, because the loans could be made only with the consent of the redeeming corporations, and because the trustee was under an obligation to earn income on the trust funds generally, we think that such loans could not be made interest free. Cf. *Harvard College v. Amory*, 9 Pick. 446, 461 (Mass. 1830). See generally 2 A. Scott, Trusts, sec. 181 (3d ed. 1967), and 3 A. Scott, Trusts, sec. 255 (3d ed. 1967). In any event, petitioner has not borrowed any moneys from the trust, nor are we aware of any attempt by the petitioner to do so.

Petitioners have elected to report the gain realized from the redemptions under section 453 as an installment sale. They contend that they have met all the requirements of section 453. Petitioners emphasize that only 25 percent of the total redemption price was paid directly to them in 1972; the remaining 75 percent was paid into the trust. Alternatively, petitioners argue that the redemption was an open transaction in 1972. Respondent argues that petitioner received 100 percent of the redemption price in 1972, directly receiving 25 percent and constructively receiving 75 percent. Alternatively, respondent argues that petitioner received the economic benefit of the entire redemption price in 1972. In either case, respondent contends that the entire gain was realized and taxable in 1972.

Section 453 allows a taxpayer to elect the installment method of reporting gain from the casual sale of personal property. See sec. 453(b)(1)(B). However, the election may be made only if, in the taxable year of the sale or other disposition, the payments received by the taxpayer (exclusive of evidence of indebtedness

of the purchaser) do not exceed 30 percent of the selling price. Sec. 453(b)(2)(A)(ii). Because section 453 is a relief provision and an exception to the general rule, it must be strictly construed. *Cappel House Furnishing Co. v. United States,* 244 F.2d 525, 529 (6th Cir. 1957); *Oden v. Commissioner,* 56 T.C. 569, 574 (1971); *Pozzi v. Commissioner,* 49 T.C. 119, 127 (1967); *Blum's, Inc. v. Commissioner,* 17 B.T.A. 386, 389 (1929).

Generally, payments into trust, which are to be later used to meet the purchasers's obligations to the seller, are deemed to be received by the seller when paid into trust unless subject to substantial restrictions. See *Williams v. United States,* 219 F.2d 523 (5th Cir. 1955); *Oden v. Commissioner,* 56 T.C. 569, 575 (1971); *Pozzi v. Commissioner,* 49 T.C. 119, 121 (1967); *Ebner v. Commissioner,* 26 T.C. 962, 966 (1956); *Johnston v. Commissioner,* 14 T.C. 560 (1950); *Murray v. Commissioner,* 28 B.T.A. 624, 629 (1933). See also sec. 1.451–2(a), Income Tax Regs. Mere postponement of payments from the account to the seller at the request of the taxpayer, however, is not a substantial restriction. See *Williams v. United States, supra* at 527; *Pozzi v. Commissioner, supra* at 128; *Holden v. Commissioner,* 6 B.T.A. 605 (1927). In *Williams v. United States, supra,* for example, the taxpayers entered into an agreement to sell standing timber. One-fifth of the purchase price was paid directly to the taxpayers, and the rest was placed into an irrevocable escrow for their benefit. The Fifth Circuit Court of Appeals held that the taxpayers had constructively received the full purchase price.

The self imposed limitation of the escrow device did not in fact and in law change the situation so as to make the funds any less available to, and constructively received by them. [219 F.2d at 527.]

There were no restrictions on payment, other than the payment schedule of the escrow account, which prevented the taxpayers from receiving the full purchase price in the year of sale.

Petitioners contend, however, that payment to petitioner of the trust funds was in fact subject to substantial restrictions. Specifically, according to the trust agreement, the redeeming corporations could file claims for any breach by petitioner of paragraph 22 or 23 of the redemption agreement. If the claims were upheld by the trustee, the trustee could set aside certain amounts deemed by it to be "reasonably necessary to secure the [redeeming corporations] * * * against any violation by [petitioner] * * * of paragraphs 22 or 23."

In *Murray v. Commissioner,* 28 B.T.A. 624 (1933), the taxpayers had entered into an agreement to sell their incorporated publishing company. More than 75 percent of the purchase price was placed in escrow as security for the taxpayers' covenant not to compete with the purchaser. The escrow agent was instructed to release one-fifth of the escrow funds each year together with all income earned on those funds. The agent was immediately to cease payments upon receipt from the purchaser of an affidavit that the taxpayers had entered into a competing business. The assets would then be held until the dispute could be resolved by a court of competent jurisdiction. Although the taxpayers controlled the investments of the escrow funds and received the income earned on those investments, we held that they did not constructively receive the funds when placed into escrow. See also *Stoner v. Commissioner,* 79 F.2d 75 (3d Cir. 1935), revg. 29 B.T.A. 953 (1934), cert. denied 296 U.S. 650 (1935); *Johnston v. Commissioner,* 14 T.C. 560 (1950); *McArdle v. Commissioner,* 11 T.C. 961 (1948); *Farr v. Commissioner,* 11 T.C. 552 (1948), affd. 188 F.2d 254 (6th Cir. 1951); *Bassett v. Commissioner,* 33 B.T.A. 182 (1935), affd. per curiam 90 F.2d 1004 (2d Cir. 1937).

In *Murray,* there was a substantial restriction or condition on the taxpayers' enjoyment of the escrow fund. Receipt of the funds by the taxpayers was contingent on the performance by them of their covenant not to compete with the purchaser. See also *Rhodes v. United States,* 243 F. Supp. 894, 899 (W.D. S.C. 1965). The condition for receipt was definite, real, and not dependent in any way upon the whim or caprice of the taxpayers. *Murray v. Commissioner, supra* at 629. Compare *Depew v. Commissioner,* 27 B.T.A. 515, 522 (1933), with *Holden v. Commissioner,* 6 B.T.A. 605, 606 (1927).

We think that payment in this case to petitioner of the trust funds was subject to substantial restrictions. If the trustee determined a documented claim for breach of paragraph 22 or 23 of the redemption agreement to be valid, the trustee could set aside funds sufficient to secure the corporations against the alleged breach. Further, paragraphs 22 and 23 appear on their faces to be substantial representations by petitioner. Petitioner represented in paragraph 22 that he had no knowledge of any obligations or liabilities for which the redeeming corporations may have been liable or of any defaults in agreements to which they may have been parties, which he had not brought to their

attention. In paragraph 23, petitioner represented that he had not entered into any of several types of agreements on behalf of the corporations without their knowledge and consent. Although respondent argues to the contrary, he offered no evidence that the representations and warranties of paragraphs 22 and 23 are insubstantial. And the fact that no breach of those paragraphs ever occurred does not make the representations and warranties any less substantial.

Respondent argues, however, that petitioner was to receive releases from liability and guarantees of indemnity from the redeeming corporations that would make the provisions of paragraphs 22 and 23 illusory. It is unclear from the record whether petitioner ever received any releases. Nevertheless, releases were required by paragraphs 9 and 13 of the redemption agreement. Paragraphs 9 and 13 thus provided:

9. PERSONAL LIABILITY. FORT KENT, PLYWOOD RANCH, RETAILERS and HYWAY agree to secure STILES' discharge from personal liability on any of their obligations to the New England Merchants National Bank prior to the closing. These entities shall also take all reasonable and proper action to secure STILES' discharge from personal liability on obligation to E.D.A. and others; and in the event they are unable to obtain such discharge of personal liability, the respective entities shall indemnify and exonerate STILES from any such liability at any time in the future.

13. RELEASES. At the closing the parties hereto and Charles Rosen shall execute and exchange individually or as their capacities may appear herein full general releases, releasing each other from any and all claims arising out of matters transpiring prior to the closing and *excepting only their obligations hereunder*. In addition, STILES agrees to execute at the closing full general releases, releasing all of the officers and directors of any of the entities affected by this sale (together with their subsidiaries and affiliates) from any and all claims arising out of matters transpiring prior to the closing. [Emphasis supplied.]

Paragraph 9 obviously refers to existing corporate liabilities of which all parties were aware and for which in all likelihood petitioner, therefore, could not be liable in any event under paragraph 22 or 23. Paragraph 13 requires all parties to issue general releases to each other. However, the releases were supposed to except the parties' obligations under the agreement itself. Thus petitioner would remain responsible for his representations under paragraphs 22 and 23 notwithstanding the releases.

Respondent also argues that petitioner was in a position to dictate the terms of the agreement and did so in order to avoid

taxation of his gain in the year of sale. We find this argument unconvincing. First, petitioner's tax saving purposes do not necessarily invalidate the transaction. The question is not one of purpose, but whether the transactions are in fact what they appear to be in form. *Chisholm v. Commissioner*, 79 F.2d 14, 15 (2d Cir. 1935); *Hobby v. Commissioner*, 2 T.C. 980, 985 (1943). So long as the redemption proceeds are in fact restricted and subject to conditions that are definite, real, and not dependent in any way upon petitioner's whim or caprice, we are not concerned with his motives for accepting those restrictions in the redemption agreement. See also *Pozzi v. Commissioner*, 49 T.C. 119, 127 (1967). Second, if respondent contends that there is no economic substance to the restrictions or that petitioner is the party who insisted on the trust arrangement, he should have presented evidence to that effect. See also *Carpenter v. Commissioner*, 34 T.C. 408, 414 (1960). We must rely on the redemption agreement, trust agreement, and various corporate documents submitted to us for our consideration; and we will consider them at face value, absent evidence to the contrary. We cannot conclude from those documents and agreements that there was no substance to the restrictions or that petitioner was the party to insist on the trust arrangement.[2] Compare *Holden v. Commissioner*, 6 B.T.A. 605 (1927). On the other hand, the stipulated facts clearly indicate that the parties were in fact negotiating at arm's length. Petitioner and Rosen had sued each other over various corporate matters prior to execution of the redemption agreement. There is no reason to believe that they were on friendly terms, much less in collaboration. Moreover, the right to place funds in trust was an option of the redeeming corporations, not petitioner, which they exercised to secure themselves against possible breaches of the redemption agreement. See also *Pozzi v. Commissioner, supra* at 127.

In addition, respondent asserts that because the redeeming corporations do not have a right under the trust agreement to repossess any of the funds that might be segregated under the

---

[2]Proof that petitioner was the party to insist on the trust arrangement would not necessarily have resulted in constructive receipt. See *Schniers v. Commissioner*, 69 T.C. 511 (1977); *Pozzi v. Commissioner*, 49 T.C. 119, 128 (1967); *Ludlow v. Commissioner*, 36 T.C. 102, 107 (1961). Such proof might, however, have indicated that the purported restrictions on payment to petitioner were actually insubstantial. See also *Williams v. United States*, 219 F.2d 523, 527 (5th Cir. 1955); see generally R. Parker, "Substitution of an Escrow Account," 47 J. Taxation 346, 347 n. 7 (December 1977); note, "Taxation: Use of Escrow Arrangements in Installment Sales," 27 Okla. L. Rev. 543, 544, 549 (1974).

terms of the agreement, they "have nothing more than a glorified prejudgment remedy, in the nature of attachment." If the segregation provision had been negotiated at arm's length, respondent continues, it would have provided for payment to the redeeming corporations of any amount finally found to be due by judicial authority or by arbitration. However, we cannot conclude simply from the nature of the segregation provision that it was not reached in an arm's-length negotiation. The obvious import of the provision is to assure the redeeming corporations that sufficient assets would later be available if needed for their indemnification. We cannot reasonably read more than that into the segregation provision here.

Respondent also argues that Rosen and the redeeming corporations specifically renounced any and all interest in the trust funds. In this regard, respondent relies on paragraph 8 of the trust agreement, which provides:

The clear meaning of this instrument is expressly hereby reaffirmed that neither the SETTLOR nor the CO-SETTLOR has any income interest or expectancy whatever under this trust; and the TRUSTEE hereby agrees to save the SETTLOR and CO-SETTLOR harmless from any and all income tax liabilities arising from the realization of income by the trust and to reimburse SETTLOR and CO-SETTLOR any amounts required to be paid by either of them for such income tax liabilities, and Fred M. Stiles joins in this provision by agreeing to carry out its terms and to save SETTLOR and CO-SETTLOR harmless and reimburse them in circumstances of non-performance (of the provisions of this Paragraph 8) by the TRUSTEE and for any such liability arising from assessments or levies made after final distribution by the TRUSTEE hereunder.

We do not read paragraph 8 of the trust agreement as a disclaimer by those parties of any and all interests in the funds. They reaffirm in paragraph 8 *only* that they have no income interest or expectancy.

Finally, we think that the trustee was in fact independent of all parties to the trust agreement. Although petitioner was the party who selected Malden Trust Co. as trustee, the trust agreement clearly provided that the trustee was to remain independent. We have no reason to conclude otherwise, absent evidence to the contrary. Cf. *Hamilton Nat. Bank of Chattanooga v. Commissioner*, 29 B.T.A. 63 (1933); *Depew v. Commissioner*, 27 B.T.A. 515, 522 (1933). Thus, because the funds were not unqualifiedly subject to petitioner's demands in 1972, they were

not constructively received by him in that year. See also *Johnston v. Commissioner*, 14 T.C. 560,565 (1950).

Respondent has also proceeded under the "economic benefit" theory. Respondent thus contends that even if petitioner did not cosntructively receive the trust funds in 1972, he received a beneficial interest therein, which is taxable to him in 1972, thereby disqualifying him under section 453(b)(2)(A)(ii) from reporting his gain on the installment method. In support of this position, respondent relies on *Sproull v. Commissioner*,16 T.C. 244 (1951), affd. per curiam 194 F.2d 541 (6th Cir. 1952), and *Oden v. Commissioner*, 56 T.C. 569 (1971).

In *Sproull v. Commissioner, supra,* the taxpayer's employer paid $10,500 into an irrevocable trust as compensation. Although we held that the taxpayer did not constructively receive the funds placed in trust, he was nevertheless taxable on the $10,500 in the year of payment into trust. The taxpayer had received the economic benefit of the trust. We emphasized that the payment into trust was irrevocable, which "does serve to distinguish this case from those in which the exact amount of compensation is subject to some future contingency or subject to the possibility of return to the employer." (16 T.C. at 247.)

In *Oden v. Commissioner, supra,* the taxpayer elected to report the proceeds from the sale of certain property under section 453. Part of the proceeds was paid in cash, and the rest was evidenced by a promissory note. The note was placed in escrow at the instance of the taxpayer together with certificates of deposit. Upon maturation of each certificate, the principal was applied to satisfy the purchaser's obligations under the note. We held against the taxpayer. Under the circumstances, we held that the taxpayer had received the right to the principal amount of the certificates in the year of purchase. Although we did not attempt to value the right, we found that it definitely exceeded 30 percent of the amount involved. Hence the taxpayer's election of the installment method was disqualified under section 453(b)(2)(A)(ii).

The taxpayer in *Oden* had relied upon several cases in which funds were placed in escrow to secure against possible breaches of warranties or representations by the seller. Those cases held for the taxpayer because the escrow funds were substantially restricted. This Court distinguished those cases, stating:

The cases cited by petitioners involving the use of escrow arrangements in

> connection with sales are distinguishable in that the receipt of money from the escrow accounts in those cases was subject to substantial conditions or limitations, other than time. For example, in *Preston R. Bassett*, 33 B.T.A. 182 (1935), part of the sales proceeds was escrowed as a guarantee that the warranties and representations made by the sellers were true and would be faithfully carried out. [56 T.C. at 577.]

We think the inverse of that distinction applies here.

In *Oden* and in *Sproull*, the funds placed in trust were not subject to substantial conditions or limitations, other than time of payment. The funds would eventually be paid to the taxpayers *in any event.*[3] However, where the taxpayer's right to enjoy the trust funds is subject to a substantial restriction or condition, he is not currently taxable under the economic-benefit theory. See also *Stoner v. Commissioner*, 79 F.2d 75 (3d Cir. 1935), revg. 29 B.T.A. 953 (1934), cert. denied 296 U.S. 650 (1935); *Johnston v. Commissioner, supra; Farr v. Commissioner*, 11 T.C. 552 (1948), affd. 188 F.2d 254 (6th Cir. 1951); *Murray v. Commissioner*, 28 B.T.A. 624 (1933). See generally comment, "Installment of Sales-Income Tax Consequences of Certificates of Deposit as Security," 41 Tenn. L. Rev. 113, 123–125 (1973).

In this case, petitioner does not enjoy an unqualified right to the trust funds. As we previously discussed, the trust funds were subject to any claims which might arise under paragraph 22 or 23 of the redemption agreement. Moreover, petitioner's interest in the trust was nonassignable.[4] Cf. *Western Oaks Building Corp. v. Commissioner*, 49 T.C. 365, 377 (1968). Thus the reasoning of *Sproull* and *Oden* does not apply here, and we therefore hold that petitioners have properly elected the installment method of accounting.

Finally, petitioners assert that under section 451, they could have used a cost recovery method of accounting with respect to

---

[3]For this reason, we also distinguish *Jacuzzi v. Commissioner*, 61 T.C. 262 (1973); *Pozzi v. Commissioner*, 49 T.C. 119 (1967); *Kuehner v. Commissioner*, 20 T.C. 875 (1953), affd. 214 F.2d 437 (1st Cir. 1954); *McEwen v. Commissioner*, 6 T.C. 1018 (1946); and *Brodie v. Commissioner*, 1 T.C. 275 (1942). In each of those cases, the taxpayer had an unqualified right to the funds placed in escrow or trust; the only thing that separated them from present possession of the funds was an escrow or trust provision that merely postponed payments to the taxpayer.

[4]The trust agreement thus provided:

5. The trust fund hereunder shall not be subject to attachment or other process to satisfy any claim of either SETTLOR, other than as herein specified, against either Seller; *nor shall any interest of any beneficiary hereunder, so far as it is possible for these settlors to make such limitation, be subject to any anticipation or voluntary or involuntary assignment,* or be reached by any creditor of or claimant against any such beneficiary through any legal or equitable process whatever.[Emphasis supplied.]

the gain realized from the redemption. In effect, petitioners are arguing that the transaction was not closed in 1972, but remains open until September 20, 1978, the date on which the last payment is to be made from the trust. See *Burnet v. Logan,*283 U.S. 404 (1931).

The change from one method of accounting to another would require a recomputation and readjustment of tax liability for subsequent years, imposing burdensome uncertainties upon the administration of the revenue laws. *Pacific National Co. v. Welch,* 304 U.S. 191, 194 (1938). Consequently, unless events reveal that the installment method does not clearly reflect income, its election is binding upon the taxpayer in the absence of a material mistake of fact. *Estate of Lamberth v. Commissioner,* 31 T.C 302, 312 (1958); see *Pacific National Co. v. Welch, supra.*

Petitioners have failed to prove that the installment method does not clearly reflect their income. There has been no claim against the trust funds which would lead us to believe that petitioner's interest therein has become worthless. Compare *Estate of Lamberth v. Commissioner, supra,* with *Ives Dairy, Inc. v. Commissioner,* 23 B.T.A. 579 (1931), affd. 65 F.2d 135 (5th Cir. 1933), and *Key Largo Shores Properties, Inc. v. Commissioner,* 21 B.T.A. 1008 (1930). And although payment of the trust funds to petitioner is subject to a substantial restriction, the amount to be realized is ascertainable nonetheless. Thus the cost recovery method of accounting would be inappropriate here. Compare *Ehlers v. Vinal,* 382 F.2d 58, 62–63 (8th Cir. 1967), with *Dorsey v. Commissioner,* 49 T.C. 606 (1968).

*Decision will be entered for the petitioners.*