C. J. PORTERFIELD AND IRENE PORTERFIELD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1504–77.      Filed October 15, 1979.

*Frank L. Scofield,* for the petitioners.
*James N. Mullen,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of $79,903.69 in the petitioners' Federal income tax for 1972. The petitioners have conceded several issues; the sole issue remaining for decision is whether the petitioners were entitled to use the installment method of section 453 of the Internal Revenue Code of 1954[1] to report the gain on the sale of a ranch. The resolution of such issue turns on whether certain certificates of deposit placed in escrow to secure the performance of the purchaser's note constitute payment within the year of the sale.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, C. J. Porterfield and Irene Porterfield, were

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect in 1972.

husband and wife in 1972 and maintained their legal residence in Bryan, Tex., at the time they filed their petition herein. They filed their joint Federal income tax return for 1972 with the Internal Revenue Service, Austin, Tex. Mr. Porterfield will sometimes be referred to as the petitioner.

In March 1972, the petitioner, a rancher and businessman in Bryan, Tex., contracted to sell a ranch (the ranch) which he had owned in Robertson County, Tex., since about 1962. Under the contract, the purchaser, Henry B. Clay, a banker and investor in Bryan, was to purchase the 1,464 acres, more or less, for $250 per acre. Mr. Clay was to pay 30 percent of the purchase price at closing; but if he could not raise that amount, he had the options of either making a small down payment and assuming a first mortgage to which the property was subject or of canceling the sale. At the time of the sale, such mortgage was in the amount of $100,450 and was held by the Kansas City Life Insurance Co. (Kansas City Life). To finance the balance of the purchase price of the ranch, Mr. Clay agreed to give the petitioner personal notes payable over a 10-year period and secured by a second mortgage on the ranch. Mr. Clay was also to pay $1,000 in earnest money, and such payment was made on March 24, 1972.

After entering into such contract, Mr. Clay learned that he could secure more favorable terms by refinancing the purchase of the ranch, and the petitioner cooperated with him in arranging for the refinancing. To that end, on June 6, 1972, the petitioner executed a deed transferring the ranch to Mr. Clay. The petitioner acknowledged in the deed that he had received $285,000 from Kansas City Life and that the money had been paid at the request of Mr. Clay. However, in fact, Mr. Clay, and not the petitioner, received this money, and on the same day, Mr. Clay executed a note for the $285,000 payable to Kansas City Life and executed a deed of trust transferring the ranch as security for the note.

On June 19, 1972, the $285,000 was deposited in Mr. Clay's name in an escrow account with the Brazos County Abstract Co. (the abstract company). The abstract company dispensed most of this money in two payments. First, on June 22, 1972, it issued to Kansas City Life a check for $100,450 in full payment of the first mortgage of the petitioner to which the ranch was subject at the time of the sale. Second, on June 30, 1972, it issued a check for $178,000 to a bank for the purchase of certificates of deposit.

The certificates were held by the abstract company under a second escrow agreement with Mr. Clay, dated July 1, 1972, under which the abstract company promised Mr. Clay to redeem the certificates as necessary in order to pay:

to CLYDE J. PORTERFIELD, FIVE (5) annual payments of $29,666.66 beginning on January 2nd, 1973 and continuing until January 2nd, 1977 and one (1) final installment of $29,666.70 on January [2d] 1978.

On July 1, 1972, Mr. Clay also executed a 6½-percent note payable to the petitioner for $178,000 in partial consideration for the ranch. The note contained the same payment schedule as the escrow agreement. The escrow agreement was intended by Mr. Clay and the petitioner to replace the ranch as security for a portion of Mr. Clay's personal obligation to the petitioner; thus, the note stated that it was secured by the escrow agreement, and the escrow agreement also stated that it secured the note.

The remaining consideration received by the petitioner for the ranch consisted of three items: First, the petitioner was entitled to a cash payment of $6,550, payable out of the $285,000 borrowed from Kansas City Life.[2] Second, on June 12, 1972, Mr. Clay executed a note for $81,112.50 payable to the petitioner over a period of 10 years, and on July 12, 1972, executed a deed of trust on the ranch to secure such note. Third, a survey of the ranch had ascertained that the actual acreage exceeded the estimate contained in the sales contract, and as a result, the petitioner received from Mr. Clay an additional note, dated July 12, 1972, in the amount of $3,740 for such additional acreage and an additional deed of trust to secure such note.

Despite some of the terms of the escrow agreement of July 1, 1972, the petitioner, Mr. Clay, and the escrow agent all considered the escrow fund merely as a security device, and in operation, it was so treated. Although the escrow agreement provided that the funds were to be paid to the petitioner, both the interest and payments of principal were actually paid to Mr. Clay. Mr. Clay, in fact, made the payments to the petitioner in accordance with the note, and the escrow agent made the payments of principal to Mr. Clay only after the agent was assured that Mr. Clay had made the payments called for by the note. The petitioner actually looked to Mr. Clay for payment of

[2]The petitioner actually received only $3,060.18, because against the $6,550 was charged the $1,000 in earnest money already received by him and $2,489.82 closing costs.

the note, and when Mr. Clay was late in making the 1974 payment, the petitioner agreed that he could wait and make such payment together with the 1975 payment.

The total sales price of the petitioner's ranch was $369,852.50. The petitioner had a basis in his ranch of $91,195.50 and selling expenses of $1,820.80; therefore, his gain was $276,836.20. On their Federal income tax return for 1972, the petitioners elected to report such gain in accordance with the installment method and included $2,273.10 as the portion of the gain reportable for that year. The petitioners now concede that they should have included $15,700.19. In his notice of deficiency, the Commissioner disallowed the installment sale treatment and determined that the entire $276,836.20 of gain should have been included in income in 1972.

## OPINION

The only issue for decision is whether the sale of the ranch qualified for installment sale treatment under section 453. That section permits gain from certain sales to be reported in the years in which payments on the sale are received, and not wholly in the year of sale, provided that "payments" in the year of sale "do not exceed 30 percent of the selling price." Section 453(b)(2)(ii) provides that "evidences of indebtedness of the purchaser" are not to be regarded as payments for such purposes.

The Commissioner concedes that despite the terms of the petitioner's deed of June 6, 1972, the petitioner did not receive the $285,000 from Kansas City Life in that year. However, the Commissioner does contend that as a result of the escrow arrangement established on July 1, 1972, the petitioner became entitled in that year to receive the $178,000 placed in escrow without any substantial restrictions except for the passage of time and that, therefore, the petitioner is considered to have received such amount in 1972. In support of his contention, the Commissioner cites several cases involving section 453 which hold that, in the words of this Court, "payments into trust, which are to be later used to meet the purchaser's obligations to the seller, are deemed to be received by the seller when paid into trust unless subject to substantial restrictions." *Stiles v. Commissioner*, 69 T.C. 558, 563 (1978); *Oden v. Commissioner*, 56 T.C.

569 (1971); *Pozzi v. Commissioner*, 49 T.C. 119 (1967); *Williams v. United States*, 219 F.2d 523 (5th Cir. 1955).

The petitioner seeks to distinguish his case by relying on our decision in *Oden v. Commissioner, supra*. *Oden* involved a sales agreement which required the buyer to place certificates of deposit in escrow to secure promissory notes which he gave to the sellers. The written escrow agreement provided that the certificates were merely to be security for the notes, thus, not available to the sellers unless the buyer defaulted. However, we found that the practices of the parties did not comport with the written escrow agreement; in fact, the escrow agent used escrow funds to make the payments on the notes as they became due directly to the sellers. We found that notwithstanding the language of the written escrow agreement, this practice of the parties indicated that the sellers did not regard the buyer as being indebted to them; the sellers looked principally to the escrow account for their payments. Therefore, we held that when the sellers received the notes secured by the certificates of deposit in escrow, they received a payment and not evidences of indebtedness of the buyer.

We left the implication in *Oden* that payments in escrow which are indeed intended and regarded solely as security for promissory notes are not payments for section 453 purposes. The other decisions the Commissioner cites do not dispel that implication. The petitioner argues that, as in *Oden*, we should look back of the terms of the written agreements to find out what the parties actually intended. He also maintains that since the parties to the escrow agreement actually intended for it to serve merely as a security arrangement, we should hold that, as suggested by *Oden*, the arrangement did not constitute a payment in the year of sale.

We have found, based on the competent testimony of the petitioner, of Mr. Clay, and of the escrow agent, that the $178,000 escrow fund came into existence solely because Mr. Clay desired to refinance the ranch through Kansas City Life. The petitioner originally intended, as the Commissioner has stipulated, merely to receive notes from Mr. Clay secured by a mortgage on the ranch. When Mr. Clay secured financing on better terms than the petitioner could offer him, Mr. Clay established the escrow fund as collateral for his obligations to the petitioner, and the petitioner intended to continue to look to

Mr. Clay as the primary debtor under the arrangement. Moreover, the escrow arrangement was always operated in a manner consistent with this intention: Mr. Clay received all interest and principal payments from the fund, and Mr. Clay personally paid all installments on his notes and did so late on at least one occasion. In summary, the petitioner has by strong proof (*Lucas v. Commissioner*, 58 T.C. 1022, 1032 (1972)) succeeded in establishing that he and Mr. Clay understood the escrow arrangement to be in the nature of a mortgage, with Mr. Clay alone indebted to the petitioner.

We recognize that ordinarily, the parties to a written instrument must be expected to have read and understood the instruments executed by them. However, the Commissioner concedes that the petitioner did not read and understand the deed in which it was recited that he received $285,000 in 1972, and that the petitioner did not in fact receive such amount in that year. Under the circumstances, we can accept the petitioner's claim that he also did not read and understand his rights under the escrow agreement and that such agreement did not correctly reflect the intentions of the parties to it. Accordingly, we hold that the petitioner is not to be treated as having received in 1972 the funds set aside in the escrow arrangement, and that the petitioners are entitled to elect to use the installment method for reporting the gain on the sale of the ranch.

*Decision will be entered under Rule 155.*